186 N.J. Super. 497 (1982)
453 A.2d 236
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ROBERT CARTER WELLS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted August 16, 1982.
Decided September 1, 1982.
*498 Before Judges FURMAN, TRAUTWEIN and GAULKIN.
Stanley C. Van Ness, Public Defender, attorney for appellant (Joseph N. Guterl, designated attorney, on the brief).
Irwin I. Kimmelman, Attorney General, attorney for respondent (Daniel Louis Grossman, Deputy Attorney General, on the brief).
PER CURIAM.
Defendant appeals from a judgment of conviction entered upon a jury verdict finding him guilty of stealing travelers checks in the amount of $10,000 (N.J.S.A. 2A:119-3). On this appeal he alleges error only in the denial of his pretrial motion, heard and decided after trial, to dismiss the indictment because of the State's asserted noncompliance with Interstate Agreement on Detainers (IAD), N.J.S.A. 2A:159A-1 et seq.
The operative facts are essentially undisputed. On June 6, 1979 a warrant was issued directing defendant's arrest to answer Indictment 982-78 handed up that day. Apparently aware that defendant was then in custody, the prosecutor addressed a letter to Special Sheriff Parker in Barnstable, Massachusetts, on June 7, enclosing a copy of the warrant and requesting that it be *499 filed "as a detainer"; the letter further asked that the prosecutor be advised "when the defendant is to be released" and confirmed that "we will extradite." On November 27, 1979 the Barnstable County Sheriff's Office reported that it still had custody of defendant "pending several trials" in Massachusetts and that the Monmouth County warrant "was lodged as a detainer."
By letter of January 18, 1980 to the Monmouth County Clerk, the Barnstable County Sheriff advised that defendant "has been taken into custody by the Sarasota Sheriff's Department, Sarasota, Florida," and that
The Warrant on Indictment from your office has been forwarded with Mr. Wells and Sarasota will lodge it as a detainer and advise you when the defendant is to be released.
By letter of January 21, 1980 to the prosecutor, the Sarasota County Sheriff confirmed that defendant had been taken to Florida State Prison at Lake Butler and that "Your certified copy of Warrant on Indictment has been forwarded with subject to be lodged as a detainer."
Shortly thereafter defendant was transferred to the Marion Correctional Institution in Lowell, Florida, to serve a Florida sentence. On March 10, 1980 he submitted a written request to the institutional authorities to prepare the "interstate compact agreement documents for a fast and speedy trial on my New Jersey warrant." On March 13 he was told to address his request to Classification Supervisor Fortner, which he did on March 31 and again on April 7. In response to both inquiries, Fortner reported that he had been unable to locate the New Jersey warrant. On April 14 defendant completed and executed IAD forms 2 ("Inmate's Notice of Place of Imprisonment and Request for Disposition, etc.") and 4 ("Offer to Deliver Temporary Custody"); on the same day the Superintendent of the Marion Correctional Institution executed form 3 ("Certificate of Inmate Status") and forwarded all three forms to the Interstate Compacts Administrator at the Florida Department of Corrections. By letter of April 30 the administrator responded to defendant that

*500 ... we have no record of receiving a detainer from the authorities in the State of New Jersey. Thus, until and unless such a detainer is on file against you we are not in a position to proceed with having you returned to that state under the provisions of Interstate Agreement on Detainers.
On April 27 defendant apparently forwarded to either or both the county clerk and prosecutor in Monmouth County a "Demand for Speedy Trial," to which he attached copies of the IAD forms executed in April. No response to that demand was then or thereafter forthcoming from the New Jersey authorities.
Apparently sometime in early June 1980 the Florida Department of Corrections finally confirmed the existence of the detainer and by letter of July 9 it forwarded to the prosecutor the previously executed IAD forms. Finally, on August 7 the prosecutor and assignment judge executed IAD form 7 ("Prosecutor's Acceptance of Temporary Custody"). Defendant was transported to the Monmouth County Jail on September 23 and was arraigned on September 26, at which time pretrial conference was scheduled for December 4 and trial for December 15. The trial commenced as thus scheduled.
N.J.S.A. 2A:159A-3(a) requires that a defendant imprisoned in a state which is party to the IAD:
... shall be brought to trial within 180 days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment... The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the State parole agency relating to the prisoner.
N.J.S.A. 2A:159A-3(b) sets forth how the required notice is to be delivered:
The written notice and request for final disposition referred to in paragraph (a) hereof shall be given or sent by the prisoner to the warden, commissioner of corrections or other official having custody of him, who shall promptly forward it together with the certificate to the appropriate prosecuting official and court by registered or certified mail, return receipt requested.
Here the required written notices were not forwarded in the manner required by N.J.S.A. 2A:159A-3 until after July *501 9, 1980, well within 180 days of the commencement of the trial. But defendant urges that "the 180 day period should commence shortly after the defendant's requests, because he is not responsible for the inaction of the prison officials." He relies on a number of cases which have held, in similar settings, that defendants cannot be saddled with the consequences of official misunderstandings or errors. See, e.g., State v. Lippolis, 107 N.J. Super. 137 (App.Div. 1969), rev'd on other grounds 55 N.J. 354 (1970); People v. Masselli, 17 App.Div.2d 367, 234 N.Y.S.2d 929 (App.Div. 1962); People v. Daily, 46 Ill. App.3d 195, 4 Ill.Dec. 756, 360 N.E.2d 1131 (App.Ct. 1977); Rockmore v. State, 21 Ariz. App. 388, 519 P.2d 877 (App.Ct. 1974). The State does not dispute the propriety of those holdings. Indeed, the State acknowledges that "once a detainer is lodged, authorities in both States can be held to knowledge concerning the person's whereabouts," but, the State argues, here the Sarasota County Sheriff's Office said in its January 21, 1980 letter that it was "not filing a detainer but was forwarding the warrant and indictment to be lodged." Therefore the "lodging" did not occur, urges the State, until July 1980.
The argument is specious. Clearly the detainer was lodged when defendant was in custody in Massachusetts and it went with him to Florida; its "lodging" cannot be permitted to turn on the manner of its clerical handling or mishandling by the Florida authorities, much less by their language characterizing their conduct. We are entirely satisfied that the detainer had been properly lodged before April 14, when defendant completed the IAD forms and entrusted them to the proper official of the Florida Department of Corrections. The trial judge properly concluded that there had been an "administrative goof-up"; under the authorities cited above, the 180-day limitation period must be said to have commenced shortly after April 14 and to have expired well before December 15. State v. Ternaku, 156 N.J. Super. 30 (App.Div. 1978), certif. den. 77 N.J. 479 (1978), is not to the contrary: our statement there that the IAD documents must be "delivered to the prosecutor and the appropriate *502 court before the 180-day period starts to run" was upon a showing that the official having custody of defendant had "promptly forwarded" the documents to the prosecutor and court.
We further conclude, in light of the Florida authorities' failure to act, that defendant's direct filing of his IAD forms with the prosecutor and court must itself be regarded as sufficient compliance with the statute. See State v. Seadin, 181 Mont. 294, 593 P.2d 451 (1979). That filing was also more than 180 days before the commencement of trial.
The trial judge denied the dismissal motion on the ground that "I think the State was ready to proceed immediately" on October 6, as set forth in the affidavit of Assistant Prosecutor Shapiro. But the record fails to show that the State sought to move the trial at any time before December 15; that the State sought any "good cause" extension of the 180-day period (N.J.S.A. 2A:159A-3(a)); that any "good cause" existed for such a continuance or that defendant requested any delay in the proceedings (N.J.S.A. 2A:159A-6(a)). Cf. State v. Lippolis, supra.
The judgment of conviction is therefore reversed and the matter remanded to the trial court for the entry of judgment dismissing the indictment.