214 N.J. Super. 195 (1986)
518 A.2d 773
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
KOSTAS HOIMES, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 17, 1986.
Decided December 16, 1986.
*197 Before Judges PETRELLA and SCALERA.
Gerard Boruch, Deputy Attorney General, argued the cause for appellant (W. Cary Edwards, Attorney General, attorney, Gerard Boruch, of counsel and on the brief).
Carolyn A. Parks, Assistant Deputy Public Defender, argued the cause for respondent, (Alfred A. Slocum, Public Defender, attorney, Carolyn A. Parks, of counsel and on the brief).
PER CURIAM.
The State appeals from an order dismissing the indictment returned against the defendant, Kostas Hoimes, on the basis that the State failed to comply with the time limits imposed by the Interstate Agreement on Detainers (IAD), N.J.S.A. 2A:159A-1 et seq. We reverse.
Preliminarily we note that the "record" on this appeal consists only of the indictment, docket entries, several orders, a series of letters exchanged between defendant, counsel and the trial court, and copies of defendant's petitions for a writ of habeas corpus, filed pro se, and containing uncertified and unverified allegations. Although the parties have not addressed this omission as an issue before us, the lack of such a basic requirement limits a review necessary for a proper disposition. Nevertheless, certain of the undisputed facts set forth in the briefs and the sparse record presented do furnish a basis from which we have gleaned sufficient information to conclude that the trial court improvidently dismissed the indictment.
On January 28, 1981 Hoimes allegedly telephoned the manager of Harrah's Marina Hotel and Casino in Atlantic City and threatened to detonate an explosive device in the casino unless $750,000 was left in a suitcase at the front entrance. Shortly thereafter defendant took a cab to the casino and instructed the driver to pick up the suitcase containing the money. Defendant was apprehended immediately after the cab's departure from *198 the casino. A search revealed that he was in possession of a .22 calibre pistol. On March 25, 1981 the Atlantic County Grand Jury indicted defendant for attempted theft by extortion, in violation of N.J.S.A. 2C:5-1 and 2C:20-5 and for possession of a weapon for an unlawful purpose in violation of N.J.S.A. 2C:39-4.
The case was originally scheduled for trial beginning July 27, 1981. However, since defendant was still recovering from quadruple coronary bypass surgery the case was adjourned until September 14, 1981. When defendant's health had not improved by that time the case was placed on the inactive list. In addition, the trial court ordered defendant to submit a written report from a treating physician every five weeks indicating his medical status and his ability to stand trial. Defendant apparently failed to comply with this aspect of the order. The State, however, also failed to take action until, in a letter dated December 29, 1982, it requested documentation from defendant's then attorney concerning defendant's medical condition so that it could arrange for a physician to examine him in an effort to move the case. Apparently this was never accomplished.
Eventually, the case was removed from the inactive list and scheduled for trial on November 14, 1983. However, defendant was again hospitalized the day before the trial and the case was rescheduled for December 12, 1983. When defendant failed to appear for trial a bench warrant was issued but it was vacated when the State learned that defendant had again been hospitalized for the heart condition on December 11, 1983. The case was rescheduled for January 30, 1984. When defendant failed to appear again another bench warrant was issued.
On May 4, 1984 defendant was arrested in Pennsylvania on federal charges. At this time he was also formally charged with being a fugitive from New Jersey and was advised that New Jersey had lodged a detainer against him. On May 17, 1984 the State notified the Pennsylvania authorities of its intent *199 to request temporary custody of defendant pursuant to the IAD. Despite repeated requests, it was unable to obtain custody of defendant. The State alleges that it was not notified until October 17, 1984 of the status of defendant's federal case and of the fact that defendant had been hospitalized on October 15 after suffering another heart attack. On December 6, 1984 defendant, through Pennsylvania counsel, requested that the State either lift its detainer or agree not to act on it pending disposition of the federal charges. The State, however, refused to do so.
In the meantime, defendant appeared before a federal judge at which time the federal prosecutor advised the court of the New Jersey detainer. Notwithstanding this, defendant was released to the Marworth Center, a private drug, alcohol and psychiatric rehabilitation facility in Waverly, Pennsylvania. (Defendant alleges that he was free to leave this facility at any time but that he chose to remain and avail himself of the rehabilitative treatment.) In late January 1985 defendant was sentenced by the federal judge to two years in prison and three years probation. At that same time the State unsuccessfully attempted to obtain custody of defendant. Instead, defendant was transferred to the United States Medical Center for Federal Prisoners in Springfield, Missouri. In order to allow defendant's condition to stabilize, the State decided not to actively seek defendant's extradition.
On June 20, 1985 defendant requested the Missouri prison authorities to inform him if any detainers had been lodged against him and was told that there were none. Apparently, the detainer filed by New Jersey with the federal authorities in Pennsylvania had not been forwarded to Missouri.
On July 9, 1985 defendant filed a petition for a writ of habeas corpus with the federal district court in Missouri. In that petition defendant acknowledged that there was no New Jersey detainer filed against him but also requested the following relief:

*200 (1) A declaratory order stating that any further prosecution by the State of New Jersey would violate his right to a speedy trial under the Sixth Amendment to the United States Constitution;
(2) An injunction forbidding the Attorney General of the United States, the State of Missouri and any other respondent from holding him for prosecution of the New Jersey charges.
The federal court refused to entertain the petition. About this time, the defendant also forwarded letters to Deputy Attorney General Ross Begelman and to the Atlantic County Criminal Presiding Judge requesting that they help him "dispose of this obstacle", referring to the instant indictment. He enclosed a copy of the petition that he had filed in federal court. He related his poor medical condition and then asserted the position that since there was no New Jersey detainer outstanding against him the State had lost jurisdiction to try him, based generally on speedy trial grounds.
In July or August 1985, apparently in response to defendant's communications, the State renewed active attempts to extradite the defendant from Missouri. When it learned that the original detainer had not been lodged in Missouri, the State promptly filed a second detainer. In August 1985 defendant's local private attorney was relieved and he was then assigned counsel from the local Public Defender's office. On August 20 the case was again placed on the inactive list pending extradition of the defendant from Missouri.
In September 1985 the Attorney General's office was notified that defendant was scheduled to be released from federal prison on November 20, 1985. The State then decided that defendant should be permitted to finish out his sentence rather than seek extradition at that time. Defendant did complete serving his federal sentence and on November 26, 1985 waived extradition and was returned to New Jersey. Also in November the defendant forwarded an unverified petition for a writ of habeas corpus to the Atlantic County Clerk in which he sought a dismissal, ostensibly based on speedy trial considerations. For unexplained reasons nothing was done with respect to the petition until the Criminal Presiding Judge solicited the State's *201 views in January, 1986. In two letters dated January 27, 1986, the State sought to relate the factual history of the proceedings and argued that the indictment should not be dismissed on speedy trial grounds. Apparently, the judge then unilaterally chose to interpret defendant's petition as a motion to dismiss the indictment pursuant to Article III of the IAD, N.J.S.A. 2A:159A-3. On February 28, 1986, he concluded that the State had failed to comply with the time limitations imposed thereon and dismissed the indictment. Although the order incorporating this decision was signed on March 6, 1986, a brief letter opinion to that effect was not issued until May 8, 1986. While the stated reason for the dismissal was allegedly the State's failure to comply with Article III of the IAD, both parties have also addressed the issue of whether the indictment could have been dismissed under Article IV or V of the IAD.
The purpose of the IAD is "to encourage the expeditious and orderly disposition of untried indictments, informations or complaints pending against defendants already incarcerated in other jurisdictions." N.J.S.A. 2A:159A-1; State v. Brockington, 89 N.J. Super. 423, 428-429 (App.Div. 1965). Detainers based on untried indictments produce uncertainties which interfere with prisoner treatment and rehabilitative programs. N.J.S.A. 2A:159A-1; State v. Masselli, 43 N.J. 1, 4 (1964). The IAD should be construed liberally in favor of prisoners within its purview. N.J.S.A. 2A:159A-9; State v. Mason, 90 N.J. Super. 464 (App.Div. 1966).
Basically, the IAD provides two methods by which a prisoner against whom a detainer has been lodged in a foreign jurisdiction may be transferred to the temporary custody of the receiving State so that the outstanding charges may be resolved. One of these may be invoked by the prisoner (N.J.S.A. 2A:159A-3(a)), the other by the prosecuting authorities of the receiving State (N.J.S.A. 2A:159A-4(a)). See also State v. Chirra, 79 N.J. Super. 270, 274 (App.Div. 1963). N.J.S.A. 2A:159A-3(a) provides in pertinent part:

*202 Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party State, and whenever during the continuance of the term of imprisonment there is pending in any other party State any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within 180 days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint: provided that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the State parole agency relating to the prisoner.
Hence, Article III requires that a prisoner be brought to trial within 180 days after he has made a request for final disposition of the case to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction. It further requires that the prisoner's request to the prosecutor and court be accompanied by a certificate of the appropriate official having custody of the prisoner.
The State urges that this statute requires strict compliance before the remedy of dismissal is available and that, since the respondent here failed to do so, the indictment should not have been dismissed. Defendant, on the other hand, contends that substantial compliance with the statute's requirements is sufficient to invoke the sanction of dismissal. He asserts that the letters which he sent to the Deputy Attorney General and the judge, along with the petitions for a writ of habeas corpus, were correctly construed as a request for final disposition of his case under Article III of the IAD.
It is well established that a prisoner must inform both the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction of his request for final disposition of the outstanding charges before the 180-day period will begin to run. Understandably, strict compliance with this provision is *203 required. State v. Ternaku, 156 N.J. Super. 30, 33-34 (App. Div. 1978), certif. den. 77 N.J. 479 (1978). In addition, the courts have generally required strict compliance with the certificate requirement of Article III(a) before the remedy of dismissal is available. State v. Brockington, 89 N.J. Super. 423, 430 (App. Div. 1965); Nash v. Jeffes, 739 F.2d 878, 884 (3d Cir.1984), rev'd on other grounds 473 U.S. 716, 105 S.Ct. 3401, 87 L.Ed.2d 516 (1985). "This requirement is necessary because the prosecuting authorities cannot be expected to analyze each communication from a prisoner with a fine-tooth comb to determine whether it should be construed as invoking the IAD." Nash, supra, at 884. However, "where the failure to strictly comply was the fault of one of the jurisdictions involved rather than the [prisoner], technical compliance will be excused." Id.; State v. Wells, 186 N.J. Super. 497, 501 (App.Div. 1982). This is necessarily so because the consequences of official misunderstandings or administrative errors should not be visited upon the prisoner. Wells, supra, at 501; State v. Lippolis, 107 N.J. Super. 137, 141 (App.Div. 1969) rev'd on other grounds 55 N.J. 354 (1970). Rather, as between the state and the prisoner, the state should bear the burden. People v. Esposito, 37 Misc.2d 386, 201 N.Y.S.2d 83, 90 (Cty.Ct. 1960).
In both Wells and Esposito, supra, the court excused the defendant's failure to comply with the technical requirements of the IAD because the prison authorities in the sending state had failed to perform their duties under the IAD. In State v. Ternaku, supra, the court held that the 180-day time limit contained in Article III does not begin to run until actual receipt of the notice and request by the prosecutor and the court. However, in that case there was no nonfeasance on the part of the prison authorities. Additionally, in State v. Brockington, supra, the court refused to dismiss the indictment because the defendant had failed to comply with both the notice (only the prosecutor was contacted) and the certificate requirements of Article III. The Brockington court distinguished Esposito because that case involved a failure to comply with *204 Article III by one of the jurisdictions involved and not the defendant.
From these cases it is clear that an appropriate analysis for determining whether the indictment was properly dismissed under Article III involves a two part test. First, it must be determined whether the defendant's failure to comply with the technical requirements of Article III was the fault of one of the jurisdictions involved or, whether it was the defendant's own fault. If the fault lies with one of the jurisdictions involved, then substantial compliance with the requirements of Article III is sufficient. However, if neither of the jurisdictions involved has done anything which caused the defendant's omissions, then such noncompliance will not be excused. Second, if substantial compliance is acceptable it must still be determined whether the defendant's actions reach such a level.
Here, the State originally filed its detainer with the federal authorities in Pennsylvania. However, the federal authorities evidently failed to transfer the detainer to Missouri. As a result, when defendant inquired as to the existence of any outstanding detainers he was informed by the prison authorities in Missouri that there were none. That being so, he could not have initiated a request under Article III of the IAD for final disposition of the pending New Jersey charges. Indeed, he explicitly recognized that this was the situation when he filed the federal petition. The State promptly undertook to correct the situation in August when it lodged the second detainer against the defendant in Missouri. Presumably defendant was duly informed that a second detainer had been lodged against him but it appears that he then took no action to initiate Article III IAD procedures.
In both Wells and Esposito, where substantial compliance was deemed sufficient, the State had been provided with specific notice that the defendant was attempting to initiate the machinery of the IAD. Here, however, there was, at best, a veiled and ambiguous indication to the State that Hoimes was *205 attempting to invoke the IAD. Rather, it appears that defendant was seeking a dismissal based on speedy trial principles as well as humane considerations. The letter to the Deputy Attorney General merely stated "I beg you to help me dispose of this obstacle, after five (5) years, to a few remaining years of peace." Similarly, the letter to the judge stated:
I plead this Court to intervene and help me to dispose of this case with a degree of dignity for myself and the State of New Jersey. I am fearful that without the intervention of this Court, this matter will drag needlessly and accomplish little except the destruction of state resource and an opportunity that I have to grab hold of a few remaining good years.
Indeed, the defendant specifically asserted in the petition for a writ of habeas corpus that he could not resort to the remedies available under the IAD because he would be waiving other rights available to him. Moreover, the Government's failure to transfer the detainer to Missouri was not a critical error, nor did it cause the defendant any actual prejudice.
To construe the letters and the habeas petition as a request by the defendant under the IAD for final disposition of his case would be surpassing the limits of the mandate to "liberally construe" the IAD. In sum, it does not appear that this is a case of fundamental state error which "result[ed] in a complete miscarriage of justice." Hill v. United States, 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962), reh. den. 369 U.S. 808, 82 S.Ct. 640, 7 L.Ed.2d 556 (1962); United States v. Williams, 615 F.2d 585, 589 (3rd Cir.1980). Thus, we conclude that defendant's letters accompanied by the petition for a writ of habeas corpus did not constitute substantial compliance with the procedural requirements of Article III.
We turn now to the parties arguments under Articles IV and V of the IAD. Article IV(a) provides:
The appropriate officer of the jurisdiction in which an untried indictment, information or complaint is pending shall be entitled to have a prisoner against whom he has lodged a detainer and who is serving a term of imprisonment in any party State made available in accordance with Article V(a) hereof upon presentation of a written request for temporary custody or availability to the appropriate authorities of the State in which the prisoner is incarcerated: provided that the court having jurisdiction of such indictment, information or *206 complaint shall have duly approved, recorded and transmitted the request and provided further that there shall be a period of 30 days after receipt by the appropriate authorities before the request be honored, within which period the Governor of the sending State may disapprove the request for temporary custody or availability, either upon his own motion or upon motion of the prisoner.
Article IV(c) further requires that trial be commenced within 120 days of the prisoner's arrival in the receiving state pursuant to a demand by the prosecutor in the jurisdiction in which the untried indictment is pending. Failure to comply with this requirement mandates dismissal of the indictment. N.J.S.A. 2A:159A-5(c); see also State v. Chirra, 79 N.J. Super. 270 (App.Div. 1963). Defendant contends that the 120-day time limit imposed by Article IV was triggered on two separate occasions, on May 17, 1984 when the State notified Pennsylvania of its intent to obtain custody of the defendant pursuant to the IAD, and also on January 31, 1985 when it attempted to obtain physical custody of the defendant at his sentencing on the federal charges. Moreover, defendant contends that once the State initiated a custody request, its continued failure to make reasonable and diligent efforts to actually obtain temporary custody violates Article V(c) of the IAD.
In Chirra, supra, the court construed Articles IV and V of the IAD to require dismissal of the indictment if the prosecutor does not make reasonable and diligent efforts to obtain temporary custody of the defendant once the original request for custody has been made. There, the court observed:
Construed accordingly, the statute impels the determination that when the prosecuting officials of a party state request temporary custody of a prisoner in another party state for trial, they must continue their effort to obtain delivery of the prisoner from the other state with all reasonable diligence and dispatch. If the prisoner is available for transfer, his custody must be accepted by such prosecuting officials. The fact that the Legislature provided for the tolling of the time periods within which prisoners must be brought to trial whenever they are `unable to stand trial' (N.J.S.A. 159A-6(a)) and a method for extending the time within which a prisoner who has been returned to a party state at the request of the prosecuting officials (N.J.S.A. 159A-4), must be brought to trial are indicative of a legislative intent that prisoners should be transferred to the state requesting custody with all reasonable dispatch. Respect for the purpose *207 of the statute requires that the adverse consequences of any failure or refusal so to act be visited upon the prosecution and not the prisoner.
79 N.J. Super. at 278 (citations omitted)[1].
Although not directly on point, State v. Lippolis, supra, is also instructive. That case involved the issue of whether the court could grant the prosecutor's request for a continuance made after the 180-day time limit had expired. The defendant was indicted for murder on November 12, 1963. Thereafter he became a fugitive from justice and later was located as an inmate in a Pennsylvania state prison. In May 1967 the defendant made a request for final disposition of the charges pending in New Jersey pursuant to the IAD. After the defendant and the county prosecutor filed the appropriate forms for temporary custody, the prosecutor was informed that the defendant was temporarily unavailable due to a pending hearing in Pennsylvania.[2] Thereafter the prosecutor did not take any action toward obtaining custody of the defendant until the defendant filed a motion to dismiss the indictment in December 1967. The State responded by belatedly moving for a continuance of the 180-day period. In a split decision, the Appellate Division affirmed the trial judge's granting of defendant's motion observing that the prosecutor had let the 180-day period run without making at least one final inquiry as to the availability of the defendant. The Supreme Court reversed and adopted the rationale of the dissenting judge who reasoned:
In the absence of more specific guidelines in the statute, the question of whether good cause exists for a continuance must be resolved from a consideration of the totality of circumstances in the particular case, on the background of *208 the considerations which motivated the interstate agreement, as expressed in N.J.S. 2A:159A-1.
Of particular significance is the fact that nothing which the prosecutor did or failed to do was indicative of an intent not to prosecute the indictment. The record is to the contrary.
I am of the opinion that in such circumstances the statutory power of the court to grant a necessary and reasonable continuance for good cause is available to correct an inadvertent or a negligent oversight by personnel in the prosecutor's office  and in the county clerk's office in failing to send the copy of the prisoner's request to the assignment judge  where, as here, the resultant delay is short and there is no showing that defendant, who had been represented by counsel at least since his request for trial was served, had been prejudiced thereby.
That the oversight should occur, whatever the explanation therefor, justifiably merits criticism of the prosecutor's office. But the dispute is not a private controversy between the prosecutor and defendant. Cf. State v. Ashby, 43 N.J. 273, 276 (1964). The public interest is involved, as the statute recognizes by authorizing judicial extensions of the 180-day period for good cause. [Id. 107 N.J.Super. at 148-149].
Thus we view the question of whether the indictment in the present case properly could have been dismissed under Article IV or V of the IAD as essentially a question of reasonableness. Chirra made clear that the prosecuting authorities must act with "all reasonable diligence and dispatch" in obtaining temporary custody of the prisoner once the initial request for the prisoner has been made. We have previously noted that the decision dismissing this indictment was reached without affording the State an opportunity to present a record of the salient facts. However, it appears that the State did act with reasonable diligence in attempting to obtain temporary custody of the defendant after the initial attempt was made. In May 1984 the State notified the appropriate authorities in Pennsylvania of their intent to obtain temporary custody of the defendant pursuant to the IAD. However, the federal authorities refused to turn the defendant over to the State at that time. Thereafter, the State made repeated requests for custody of the defendant from May until the defendant suffered another heart attack in October.
In January 1985 the State again attempted to obtain custody of defendant. When this attempt failed the State decided to *209 postpone extradition to allow the defendant's physical condition to stabilize. It appears that the State did have an opportunity to obtain custody of the defendant beginning in June or July and continuing until he was released in November 1985. However, the decision not to attempt to extradite the defendant at that time does not appear unreasonable, especially when considered in light of the previous difficulties the State had experienced in attempting to obtain custody and the short period of time remaining on the federal sentence. The IAD only requires that the State make a reasonable effort to obtain custody of the prisoner. It does not impose an absolute duty. To conclude otherwise would contravene the spirit and purpose of the IAD.
Furthermore, one of the fundamental purposes of the IAD is to minimize interference with the rehabilitative process by avoiding unnecessary shuttling back and forth between states. N.J.S.A. 2A:159A-1; U.S. v. Bryant, 612 F.2d 806 (4th Cir.1979) cert. den. 446 U.S. 920, 100 S.Ct. 1855, 64 L.Ed.2d 274 (1980). Adams v. Cuyler, 592 F.2d 720 (3rd Cir.1979) aff'd 449 U.S. 433, 101 S.Ct. 703, 66 L.Ed.2d 641 (1981). The defendant here was never shuttled back and forth between states. Indeed, the desire to avoid unnecessary shuttling back and forth may well have been the reason for the State's decision not to continue in its efforts to obtain custody of the defendant in September 1985. Finally, while this matter was complicated by the fact that there was no detainer actually filed against the defendant in Missouri until August 1985, apparently due to an administrative error, defendant suffered no detrimental effects of a detainer prior thereto. Under the circumstances it appears that the State made reasonable efforts to obtain custody of defendant. We therefore conclude that the State did not violate the time constraints imposed by Articles IV and V of the IAD.
Finally, defendant parenthetically raises the issue of the violation of his right to a speedy trial. While that issue was never fully explored below, on the basis of the record before us *210 it appears that this argument lacks merit. The seminal case on the right to a speedy trial is Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). The Barker Court stated that the determination of whether an individual's right to a speedy trial has been violated must be determined on an ad hoc basis. In addition, the court identified specific factors which should be considered in making this determination. Id. at 530, 92 S.Ct. at 2192, 33 L.Ed.2d at 116-117. See also State v. Szima, 70 N.J. 196 (1976), cert. den. 429 U.S. 896, 97 S.Ct. 259, 50 L.Ed.2d 180 (1976). Considering the fact that the defendant did not assert his right to a speedy trial until June 1985, that he was apparently responsible for every delay in bringing the case to trial and that he suffered little, if any prejudice, we see no basis to conclude that defendant's right to a speedy trial was violated.
In sum we conclude that the trial judge erred in dismissing the indictment and therefore vacate that order and remand this matter for further proceedings not inconsistent with this opinion.
NOTES
[1] While this case was ultimately affirmed on direct certification, State v. Masselli, 43 N.J. 1 (1964), the Supreme Court found it unnecessary to determine whether the trial court had properly concluded that the county prosecutor had "fail[ed] or refuse[d] to accept temporary custody" of the defendants pursuant to N.J.S.A. 2A:159A-5.
[2] It was later determined that the defendant was only unavailable from September 11, 1967 to September 21, 1967.