233 N.J. Super. 299 (1989)
558 A.2d 1333
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
RICHARD STILES, SR., DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted April 17, 1989.
Decided May 12, 1989.
*301 Before Judges J.H. COLEMAN and BAIME.
Frank J. Hoerst, Salem County Prosecutor, attorney for appellant (Robert S. Kail, Assistant Prosecutor, on the brief).
Tomar, Simonoff, Adourian & O'Brien, attorneys for respondent (Jaffa F. Stein, on the brief).
The opinion of the court was delivered by BAIME, J.A.D.
This is an appeal from an order of the Superior Court, Law Division, dismissing an indictment returned against defendant on the basis that the State failed to comply with the time constraints imposed by the Interstate Agreement on Detainers (IAD) (N.J.S.A. 2A:159A-1 et seq.). We reverse.
The salient facts can be stated briefly. On April 4, 1986, the Salem County grand jury returned a multi-count indictment charging defendant and Lori Vinciguerra with possession of at least one ounce of cocaine having 3.5 grams of pure free base (N.J.S.A. 24:21-20a(2)) and possession of the same substance in the same amount with the intent to distribute (N.J.S.A. 24:21-19a(1) and N.J.S.A. 24:21-19b(2)). At some point, notices were sent to defendant and his attorney, a member of the New *302 Hampshire bar, advising them that the trial was scheduled for July 21, 1986. In response, on July 14, 1986, defense counsel sent a letter to the Salem County Prosecutor advising him that defendant had been convicted of two crimes in New Hampshire since his arrest in New Jersey on the drug charges and that he was currently serving the sentences imposed upon him in those cases. The attorney noted that he had filed a petition for a writ of habeas corpus in the United States District Court challenging the validity of the New Hampshire convictions and that he would notify the prosecutor in the event bail were granted or defendant were otherwise released so that the matters pending in New Jersey could be concluded. Counsel suggested that a detainer be placed on defendant with the Rockingham County House of Corrections and that arrangements be made to have Stiles transported to New Jersey.
On July 15, 1987, following New Jersey's request for temporary custody of defendant, Joseph Wehrle, the Administrator of Offender Records in the New Hampshire Department of Corrections, met with Stiles and asked him to sign "form 2," a standardized document used by participating states. "Form 2" provides in pertinent part as follows:
 You are hereby notified that the undersigned is now
 imprisoned in ________________
 (institution)
 at __________________________________________________
 (town and state)
and I hereby request that a final disposition be made of the following indictments, informations or complaints now pending against me:
Failure to take action in accordance with the Agreement on Detainers, to which your state is committed by law, will result in the invalidation of the indictments, informations or complaints. I here by agree that this request will operate as a request for final disposition of all untried indictments, informations or complaints on the basis of which detainers have been lodged against me from your state. I also agree that this request shall be deemed to be my waiver of extradition with respect to any charge or proceeding contemplated hereby or included herein, and a waiver of extradition to your state to serve any sentence there imposed upon me, after *303 completion of my term of imprisonment in this state. I also agree that this request shall constitute a consent by me to the production of my body in any court where my presence may be required in order to effectuate the purposes of the Agreement on Detainers and a further consent voluntarily to be returned to the institution in which I now am confined. (Emphasis supplied.)
Defendant refused to sign the document, however, stating that he wished to discuss the matter with his attorney. Despite defendant's refusal, New Hampshire forwarded a "certificate of inmate status" to the Salem County Prosecutor pursuant to N.J.S.A. 2A:159A-3(a), on March 25, 1987.
The matter remained dormant until New Jersey formally filed documents in New Hampshire seeking defendant's extradition. In response, defendant filed a petition for a writ of habeas corpus in the Superior Court of New Hampshire, "contesting the legality of his delivery to the State of New Jersey." At the hearing, defendant withdrew his petition, noting his intention to sign "form 2." A formal order was entered accordingly on October 14, 1987, dismissing the petition on the basis that "[p]laintiff desire[d] to be transferred to New Jersey as soon as possible."
Upon receipt of this order, Mr. Wehrle contacted defendant and again asked him to sign "form 2," expressing his willingness to return to New Jersey for disposition of the charges. However, defendant refused to execute the document. Defendant stated that he wished to discuss the matter with a New Jersey attorney. Obviously concerned with defendant's new change of mind, Mr. Wehrle sent a confirmatory letter describing in detail their prior conversation and Stiles' refusal to sign "form 2." Mr. Wehrle closed his letter by advising Stiles he would take no further action until defendant agreed to sign "form 2."
On January 24, 1988, defendant sent an inmate request slip to Mr. Wehrle stating that he had a court appearance scheduled in three days and requesting that he be provided with a "form 2." On January 27, 1988, the date defendant was to be in court, Mr. *304 Wehrle responded by stating that he had been absent from work the day before and thus was unable to accede to Stiles' request, but in any event, a "form 2" did not have to be signed in court. Defendant made no further attempt to request his return to New Jersey for disposition of the pending charges.
Instead, on February 18, 1988, defendant's New Jersey counsel filed a motion to dismiss the indictment. However, the motion was not heard until September 2, 1988, apparently because defendant replaced his Public Defender attorney with current counsel. In an oral opinion, the trial court determined that the State had failed to comply with the time limit imposed by N.J.S.A. 2A:159A-3(a). In reaching this conclusion, the court determined that defense counsel's letter of July 14, 1986, requesting that a detainer be placed on defendant and arrangements be made to transport him to New Jersey constituted a "request for final disposition" under N.J.S.A. 2A:159A-3(a). Although this "request" was not accompanied by a "certificate of inmate status," as required by the statute, this deficiency was said to have been corrected on March 25, 1987. The court found that New Hampshire's action in forwarding the "certificate of inmate status" on that date triggered IAD's 180-day time limit to bring defendant to trial. Alternatively, the court found that the order of the Superior Court of New Hampshire, dated October 14, 1987, memorializing defendant's withdrawal of his petition for a writ of habeas corpus and noting his desire "to be transferred to New Jersey as soon as possible" constituted a "request for final disposition" under N.J.S.A. 2A:159A-3(a). Since New Hampshire had already forwarded the "certificate of inmate status," the court stated that, viewing the evidence most favorably to the State, the 180-day period began running on the date of the Superior Court's order, October 14, 1987. The court rejected the State's argument that defendant's refusal to sign "form 2" precluded him from asserting he was denied a speedy disposition under the IAD. In this respect, the court found that execution of "form 2" was unnecessary because, under N.J.S.A. 2A:159A-3(e), a "request for final disposition" *305 constituted a waiver of extradition. "Form 2" was thus said to be superfluous and unnecessary. Finding that the State transgressed the time limitation set forth in N.J.S.A. 2A:159A-3(a), the court dismissed the indictment.
We disagree with this conclusion. The articulated objective of the IAD is "to encourage the expeditious and orderly disposition of such ... untried indictments, informations or complaints" pending against defendants already incarcerated in other jurisdictions. N.J.S.A. 2A:159A-1. See also State v. Brockington, 89 N.J. Super. 423, 428-429 (App.Div. 1965). Toward that end, the IAD provides two methods by which a prisoner against whom a detainer has been lodged in a foreign jurisdiction may be transferred to the temporary custody of the receiving state so that the outstanding charges may be resolved. One of these, Article III, may be invoked by the prisoner, see N.J.S.A. 2A:159A-3(a), and the other, Article IV, by the prosecuting authorities of the receiving state, see N.J.S.A. 2A:159A-4. See State v. Chirra, 79 N.J. Super. 270, 274 (Law Div. 1963). The operative statute here is N.J.S.A. 2A:159A-3(a) which reads as follows:
Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party State, and whenever during the continuance of the term of imprisonment there is pending in any other party State any untried indictment, information, or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within 180 days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint: provided that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the State parole agency relating to the prisoner.
Thus, Article III mandates that a prisoner be brought to trial within 180 days after he has made a request for final disposition *306 of the case to the prosecutor and the appropriate court. The statute further requires that a prisoner's request to the prosecutor and court be accompanied by a certificate of the appropriate official having custody of the prisoner.
The right to be brought to trial within the 180 day period is triggered by the prisoner's request for final disposition of the pending charges. For obvious reasons, "strict compliance with this provision is required." State v. Hoimes, 214 N.J. Super. 195, 202-203 (App.Div. 1986). See also State v. Ternaku, 156 N.J. Super. 30, 33-35 (App.Div. 1978), certif. den. 77 N.J. 479 (1978); State v. Brockington, 89 N.J. Super. 423, 430 (App.Div. 1965); State v. Chirra, 79 N.J. Super. 270, 276 (Law Div. 1963). The requirement of strict compliance "is necessary because the prosecuting authorities cannot be expected to analyze each communication from a prisoner with a fine-tooth comb to determine whether it should be construed as invoking the IAD." Nash v. Jeffes, 739 F.2d 878, 884 (3d Cir.1984), rev'd on other grounds, 473 U.S. 716, 105 S.Ct. 3401, 87 L.Ed.2d 516 (1985). See also State v. Wells, 186 N.J. Super. 497, 501 (App.Div. 1982). New Jersey and other jurisdictions have, therefore, refused to accord a prisoner the benefits of the IAD absent a clear and unequivocal expression of the desire to be returned to the receiving state for disposition of pending charges. See, e.g., Remick v. Lopes, 203 Conn. 494, 503-06, 525 A.2d 502, 508 (Sup.Ct. 1987); McBride v. United States, 393 A.2d 123, 129 (D.C.App.Ct. 1978), cert. den. sub nom. Thomas v. United States, 440 U.S. 927, 99 S.Ct. 1260, 59 L.Ed.2d 482 (1979); Gardner v. Gaubatz, 719 P.2d 329, 331 (Colo. App. Ct. 1986); People v. Daily, 46 Ill. App.3d 195, 203-04, 4 Ill.Dec. 756, 763, 360 N.E.2d 1131, 1138 (Ill. App.Ct. 1977); Commonwealth v. Lloyd, 370 Pa.Super. 65, 535 A.2d 1152, 1159-1160 (Pa. Super. Ct. 1988). See also Casper v. Ryan, 822 F.2d 1283, 1291-1294 (3d Cir.1987), cert. den. ___ U.S. ___, 108 S.Ct. 714, 98 L.Ed.2d 664 (1988). The only exception to this rule is "where the failure *307 to strictly comply [is] the fault of one of the jurisdictions involved rather than the prisoner...." Nash v. Jeffes, supra, 739 F.2d at 884. This is so "because the consequences of official misunderstandings or administrative errors should not be visited upon the prisoner." State v. Hoimes, supra, 214 N.J. Super. at 203; State v. Wells, supra, 186 N.J. Super. at 501. See also People v. Esposito, 37 Misc.2d 386, 201 N.Y.S.2d 83, 90 (Cty.Ct. 1960).
Synthesizing these decisions, it first must be determined whether the prisoner complied with the statutory mandate that a request for a return to the receiving state for disposition of the pending charges was made. If the prisoner failed to satisfy this requirement, the focus of judicial inquiry shifts to whether either the sending or receiving jurisdiction was at fault. If fault lies with one of the jurisdictions, it must then be determined whether the prisoner's actions constituted substantial compliance.
Applying these principles, we are convinced that defendant never requested final disposition of the charges. Indeed, defendant's repeated refusal to sign "form 2" and his conduct in contesting the State's attempt to extradite him were wholly inconsistent with the thesis that he wished to be returned to New Jersey for the purpose of trial on the pending indictment.
Initially, we do not regard defense counsel's letter of July 14, 1986 as a "request for final disposition" under N.J.S.A. 2A:159A-3(a). Although counsel suggested that a detainer be placed on defendant and that arrangements be made to transport him to New Jersey, the letter is devoid of any clear and unequivocal expression of a request that he be returned for a "final disposition" of the indictment, as required by N.J.S.A. 2A:159A-3(a). Moreover, the letter was not accompanied by a "certificate of inmate status." Ibid. Nothing in the letter indicates that defendant was attempting to invoke the IAD. *308 We discern no demand, either express or veiled and ambiguous, that defendant be brought to trial within 180 days. To interpret the letter as a request by the defendant under the IAD for final disposition of the case "would be surpassing the limits of the mandate to `liberally construe' [the statutory scheme]." State v. Hoimes, supra, 214 N.J. Super. at 205.
Nor do we deem defendant's representation of his desire to be returned to New Jersey when he withdrew his petition for a writ of habeas corpus as a "request for final disposition." We recognize that the order of the Superior Court of New Hampshire memorialized that representation. However, defendant immediately thereafter refused to sign "form 2." As we noted in our recital of the facts, that document contains a clear expression of the prisoner's desire to be returned to the receiving state for final disposition of the charges. Although defendant surely had the right to have this document reviewed by his attorney, the fact remains that he abjectly declined to sign "form 2," despite numerous requests that he do so.
The trial court excused defendant's failure on the basis that "form 2" provided a waiver of extradition which is completely unnecessary in light of N.J.S.A. 2A:159A-3(e). That subsection provides that a "request for final disposition made by a prisoner... shall ... be deemed to be a waiver of extradition...." Ibid. While we agree that a request for final disposition need not expressly contain a waiver of extradition in order to qualify under N.J.S.A. 2A:159A-3(e), we nevertheless perceive nothing particularly objectionable in the language contained in "form 2" making such a waiver explicit. At best, this language constitutes mere surplusage. The principal thrust of "form 2" is the request to be returned to the receiving state for final disposition of pending charges. Under the circumstances of this case, we find that Mr. Wehrle's repeated requests for defendant to sign the document were entirely reasonable. *309 While the language of the IAD does not specifically require that certain forms be signed in order to constitute a formal request, we find nothing inherently wrong in that course particularly where, as here, the prisoner has not otherwise unequivocally demanded that he be returned to the receiving state for final disposition of pending charges. Although our research has revealed no reported New Jersey opinion dealing with this precise issue, other jurisdictions have upheld the right of the state to require that a defendant sign "form 2" in order to invoke the IAD. See, e.g., Gardner v. Gaubatz, supra, 719 P.2d at 331; Edmond v. Michigan Department of Correction, 78 Mich. App. 196, 259 N.W.2d 423 (Mich. App.Ct. 1977).
Finally, we find that neither New Hampshire, the sending jurisdiction, nor New Jersey, the receiving state, was in any sense at fault or otherwise responsible for defendant's failure to comply with the requirements of N.J.S.A. 2A:159A-3(a). Perhaps, in retrospect, Mr. Wehrle should have been more solicitous of defendant's rights when, on January 24, 1988, Stiles requested that he be provided a "form 2." Significantly, Mr. Wehrle did not deny that request. Instead, he merely informed defendant that the document need not be signed in court. We cannot fairly fault Mr. Wehrle's conduct from the vantage point of twenty-twenty hindsight. The simple and overriding fact is that defendant repeatedly sent conflicting signals as to whether he wished to be returned to New Jersey. Increasingly frustrated by defendant's refusal to sign "form 2" and his challenge to New Jersey's request for extradition, New Hampshire officials understandably and properly decided to await action by defendant unequivocally expressing his desire to be transported to New Jersey for the purpose of trial.
We thus conclude that the trial court erred by granting defendant's motion. The order of the Law Division dismissing the indictment is accordingly reversed.