287 N.J. Super. 179 (1995)
670 A.2d 608
STATE OF NEW JERSEY, PLAINTIFF,
v.
STUART MOREAU, DEFENDANT.
Superior Court of New Jersey, Law Division, Hudson County.
October 24, 1995.
*181 Carmen Messano, Hudson County Prosecutor (Charles Centinaro, Assistant Prosecutor) appearing for the State.
Verna Leath, Hudson County Deputy Public Defender (Judith B. Fallon, Assistant Deputy Public Defender, appearing for the defendant).

OPINION
Jose L. FUENTES, J.S.C.
This case presents a novel question of construction of New Jersey's version of the Interstate Agreement on Detainers *182 ("IAD"). Under the Agreement, which is codified at N.J.S.A. 2A:159A-1 to -15, a prisoner in one party state[1] (known as the "sending state") can make a request for final disposition of an untried indictment, information or complaint upon which a detainer has been filed against that prisoner in another party state (known as the "receiving state"). N.J.S.A. 2A:159A-2, -3(a). If the state in which the detainer has been filed does not bring the prisoner to trial within 180 days from the date of its notice of the prisoner's request, the Agreement directs the court to enter an order dismissing, with prejudice, the untried indictment, information or complaint. N.J.S.A. 2A:159A-3(d). The issue to be decided is whether the court can dismiss the untried indictment underlying the detainer before the 180-day period has run when the State has declared its intention not to bring the matter to trial within the requisite 180-day period.

PROCEDURAL HISTORY
In this case, movant, Stuart Moreau,[2] was arrested in New Jersey on May 18, 1994, and charged with obstructing governmental operations. Movant, who was already the subject of a warrant that had been issued by authorities in New York, posted bail and, after waiving extradition, was taken to New York on July 21, 1994, to face charges there. He has remained in custody in New York since that date.
On May 11, 1995, while movant was in custody in New York, a warrant was issued by a New Jersey court to serve as a detainer *183 on movant.[3] Movant requested final disposition of his untried New Jersey indictment on July 13, 1995, and the State received official notice of this request by July 19, 1995, thus triggering the 180-day period in which to bring movant to trial. N.J.S.A. 2A:159A-3(a).[4] Since that time the State has refused to extradite defendant or otherwise to facilitate the disposition of his untried offense. In response, movant has filed a motion to dismiss the untried New Jersey indictment, claiming that the State is acting in constructive violation of the IAD.

LEGAL ANALYSIS
As a preliminary matter, this court must find that movant has complied with all of the procedural requirements specified in Article III of the IAD in order to entertain a challenge on the merits of the case. N.J.S.A. 2A:159A-3. Generally, courts have required strict compliance with the notice provisions of Article III. State v. Hoimes, 214 N.J. Super. 195, 203, 518 A.2d 773 (App.Div. 1986); Nash v. Jeffes, 739 F.2d 878, 884 (3d Cir.1984), rev'd on other grounds, 473 U.S. 716, 105 S.Ct. 3401, 87 L.Ed.2d 516 (1985). However, if movant's failure to comply strictly with Article III results from administrative error or mistake on the part of the sending or receiving state, substantial compliance will suffice. State v. Hoimes, supra, 214 N.J. Super. at 203, 518 A.2d 773; U.S. v. Reed, 910 F.2d 621, 624 (9th Cir.1990).
The court finds that movant strictly complied with the dictates of Article III. His request for final disposition was accompanied by the appropriate certificate from the superintendent *184 of the correctional facility in which movant is incarcerated,[5] and the record shows that the superintendent sent the request and accompanying papers to the Clerk of the Superior Court of Hudson County by certified mail as required. N.J.S.A. 2A:159A-3(a). Furthermore, the State has not challenged any aspect of movant's compliance with IAD procedure. Lastly, the court finds that movant has been and is able to stand trial, so there has been no tolling of the 180-day time period in which the State must bring him to trial. See N.J.S.A. 2A:159A-6.[6] Therefore, the court will now consider the merits of movant's claim.
Movant's claim presents an issue of first impression to this jurisdiction; namely, may the court dismiss the untried indictment underlying a detainer before the 180-day period for trying that indictment has expired, when the State has indicated its unequivocal intent not to prosecute this matter until movant is released from his New York prison term on July 22, 1997. Movant argues that the State, by declaring its intention not to request the production of the defendant within the 180-day period, has constructively violated the IAD and is, in effect, "thumbing its nose" at the Agreement. Despite the fact that movant's liberty is *185 already severely curtailed by virtue of his present incarceration in New York, he argues that he has suffered and continues to suffer real prejudice as a result of the detainer, and so the court must dismiss the indictment in light of the State's apparent refusal to prosecute. The State, on the other hand, maintains that its failure to extradite movant and schedule the indictment for trial does not place it outside of the boundaries of the IAD while the 180-day time limit has yet to expire.[7]
Any consideration of movant's claim must begin with an analysis of the IAD itself, as New Jersey has adopted it at N.J.S.A. 2A:159A. Unfortunately, the statute does not specifically address how to resolve a case such as this, where the State has indicated it will not request temporary custody of the prisoner and schedule the matter for trial, even though the 180-day period for doing so has not expired. The relevant part of subsection (a) of Article III reads:
[the prisoner requesting final disposition of an untried indictment underlying a detainer] shall be brought to trial within 180 days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint....
[N.J.S.A. 2A:159A-3(a).]
Subsection (d) of Article III states that:
[i]f trial is not had on any indictment, information or complaint contemplated hereby prior to the return of the prisoner to the original place of imprisonment, such indictment, information or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.
[N.J.S.A. 2A:159A-3(d)]
Additionally, subsection (c) of Article V directs that:

*186 [i]f the appropriate authority shall refuse or fail to accept temporary custody of [the requesting prisoner], or in the event that an action on the indictment, information or complaint on the basis of which the detainer has been lodged is not brought to trial within the period provided in Article III or Article IV[8] hereof, the appropriate court of the jurisdiction where the indictment, information or complaint has been pending shall enter an order dismissing the same with prejudice, and any detainer based thereon shall cease to be of any force or effect.
[N.J.S.A. 2A:159A-5(c).]
On its face, the pertinent parts of the Agreement make no mention of any power of the court to dismiss an untried indictment prior to the expiration of the prescribed 180-day time period in which to bring the matter to trial. However, Article IX states that "[t]his agreement shall be liberally construed so as to effectuate its purposes." N.J.S.A. 2A:159A-9. Further, the court must read all parts of the statute together and consistently with the statute's purposes. State v. Chirra, 79 N.J. Super. 270, 277, 191 A.2d 308 (Law Div. 1963) (citing Seatrain Lines, Inc. v. Medina, 39 N.J. 222, 226-27, 188 A.2d 169 (1963)).[9] Thus, the court must explore the purposes of the IAD in order to construe the agreement properly.
Article I of the IAD explains that
it is the policy of the party States and the purpose of this agreement to encourage the expeditious and orderly disposition of [untried indictments, informations or complaints which form the basis for detainers] and determination of the proper status of any and all detainers based on untried indictments, informations and complaints.
[N.J.S.A. 2A:159A-1.]
The legislative history accompanying the IAD cited the disadvantages suffered by a prisoner burdened with a detainer, such as *187 stricter custodial supervision, loss of favorable work assignments, and general uncertainty about one's future freedom, as the rationale favoring the IAD's adoption. S.Rep. No. 1356, 91st Congress, 2d Sess. (1970), reprinted in 1971 U.S.C.C.A.N. 4864, 4866.
The Supreme Court accepted this reasoning and adopted it as its own in Smith v. Hooey. 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969). The Court noted that
[a]t first blush it might appear that a man already in prison under a lawful sentence is hardly in a position to suffer from "undue and oppressive incarceration prior to trial." But the fact is that delay in bringing such a person to trial on a pending charge may ultimately result in as much oppression as is suffered by one who is jailed without bail upon an untried charge. First, the possibility that the defendant already in prison might receive a sentence at least partially concurrent with the one he is serving may be forever lost if trial of the pending charge is postponed. Secondly ... the duration of his present imprisonment may be increased, and the conditions under which he must serve his sentence greatly worsened, by the pendency of another criminal charge outstanding against him.
[Id. at 388, 89 S.Ct. at 577.]
While the case in Smith differed from the instant case in that the prisoner in Smith had been seeking trial on the outstanding matter for more than six years, and the Court decided the case under the Sixth Amendment right to speedy trial rather than the IAD,[10] the Court's words are nevertheless instructive. Taken together with the stated purposes of the IAD, they compel the court to find that outstanding detainers, and the untried indictments, informations and complaints underlying them, generate serious consequences for prisoners so burdened and thus should be resolved with all possible celerity and consideration to the parties and jurisdictions involved.
Given the purposes of the IAD and the significant impacts that detainers have upon prisoners, it is the duty of the court to exercise real vigilance in enforcing the agreement. Such vigilance entails, at the very least, making sure that the State exhibits good *188 faith in complying with prisoners' requests for final disposition of untried matters.
"Good faith," as a concept, carries with it many different definitions and is almost always highly fact-sensitive. Certainly, good faith contemplates "honesty of purpose and integrity of conduct with respect to a given subject." Smith v. Whitman, 39 N.J. 397, 405, 189 A.2d 15 (1963) In the IAD context, good faith requires a modicum of diligence  some discernible effort  on the part of the State to bring a prisoner to trial once that prisoner has requested final disposition of an untried indictment, information or complaint. Alternatively, if the State decides that it will not comply with a prisoner's request for final disposition within the required 180 days, the State must seek dismissal of the matter so as not to unjustly to burden the prisoner with the effects of a charge which the State has no intention of pursuing.
To the court's dismay, the State has not exhibited good faith in its response, or lack thereof, to movant's request for final disposition under the IAD. The State has offered no real explanation for its refusal to seek temporary custody of the prisoner and schedule a trial date for the indictment in question other than to aver that it is acting within its rights under the IAD. If the State were to give some indication that it would bring the matter to trial within the requisite 180-day period, this assertion would not ring so hollow. Based on the record before it, the court finds that the State has no intention of bringing this matter to trial within the time allotted to do so under the IAD.
To allow movant to continue to suffer the deleterious consequences of the detainer until the sands run out of the State's IAD hourglass would be a perversion of the purposes for which the agreement stands. Conversely, to grant movant's motion to dismiss the indictment underlying his detainer would serve notice to the State that bad faith will not be tolerated when a person's liberty interest is at stake. As the Lippolis court noted, "[t]he sanction [of dismissal] is a prophylactic measure to induce compliance *189 in the generality of cases." State v. Lippolis, 107 N.J. Super., 137, 145, 257 A.2d 705 (App.Div. 1969).
As Article IX of New Jersey's Interstate Agreement on Detainers confers upon the court the authority to construe the agreement liberally so as to effectuate its purposes, the court finds that:
1) the State has no intention of bringing movant to trial on his New Jersey indictment within the 180-day period prescribed by N.J.S.A. 2A:159A-3(a);
2) the State has exhibited bad faith in refusing to seek temporary custody of movant and schedule his matter for trial; and,
3) thus, the State has constructively violated Articles III and V of the Interstate Agreement on Detainers.
Accordingly, the motion to dismiss the indictment with prejudice is granted.
NOTES
[1] All states which have signed the agreement are considered party states. Currently, 47 states and the District of Columbia have signed the agreement. See, e.g., N.J.S.A. 2A:159A-1 (West 1985 and 1995 Supp.). The United States is also a signatory. 18 U.S.C.A.. § 2.
[2] Defendant is also known as Michael Larsen.
[3] Movant has objected to the issuance of this warrant, contending that he failed to appear before the New Jersey court only because he was incarcerated in New York.
[4] The 180-day period in which to bring movant to trial on the New Jersey indictment would expire on January 15, 1996.
[5] The certificate must include statements regarding: the term of commitment to be served by the prisoner; the time already served; the time remaining to be served; any "good time" earned; the date of the prisoner's parole eligibility; and any decisions concerning this prisoner made by the appropriate parole board. N.J.S.A. 2A-159A-3(a). Also, the papers submitted by the prison official on behalf of the requesting prisoner must contain an offer to deliver temporary custody of that prisoner. N.J.S.A. 2A:159A-5(c).
[6] The court is mindful of the Seventh Circuit's ruling in United States v. Dawn, in which that court held that the running of the 180-day period was tolled during the pendency of movant's motion to dismiss the outstanding indictment under the IAD. 900 F.2d 1132 (7th Cir.1990) However, the court does not view this somewhat puzzling ruling as controlling, and follows instead the New Jersey courts' position, as expressed in State v. Lippolis, 107 N.J. Super. 137, 257 A.2d 705 (App.Div. 1969), rev'd on other grounds, 55 N.J. 354, 262 A.2d 203 (1970). "It is our view ... that nothing but defendant's actual inability to stand trial can toll the statute under the section cited [Article VI of the IAD]." Id. at 107 N.J. Super. 141, 257 A.2d 705.
[7] At the hearing on the motion to dismiss, the Assistant Prosecutor representing the State asserted that "[t]he State did comply with the IAD. It made the decision which the IAD requires, whether or not to extradite or not to extradite, bring to trial or not bring to trial, and that's exactly what the State has done." Tape of Motion Hearing, State of New Jersey v. Stuart Moreau, held before Hon. Jose L. Fuentes, Superior Court, Hudson County, Criminal Division (Law.Div. October 13, 1995) (on file with the court). The decision alluded to was the decision not to extradite or prosecute movant.
[8] Article IV does not bear directly on the facts in this case. See N.J.S.A. 2A:159A-4.
[9] The Court quoted Febbi v. Board of Review, Division of Employment Security, 35 N.J. 601, 606, 174 A.2d 481 (1961), in holding [i]t is a cardinal rule of statutory construction that the intention of the Legislature is to be derived from a view of the entire statute and that all sections must be read together in the light of the general intent of the act so that the auxiliary effect of each individual part of a section is made consistent with the whole. Chirra, supra, 79 N.J. Super. at 277, 191 A.2d 308.
[10] The Court ruled that the receiving state, Texas, had a constitutional duty "to make a diligent, good-faith effort" to bring to trial the prisoner seeking final disposition. Smith, supra, 393 U.S. at 383, 89 S.Ct. at 579.