851 A.2d 41 (2004)
370 N.J. Super. 203
STATE of New Jersey, Plaintiff-Respondent,
v.
Michael A. PERO, III, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted April 28, 2004.
Decided June 18, 2004.
*42 Michael A. Pero, III, appellant pro se (Robert M. Kalisch, Office of the Public Defender, Standby Counsel[1]; Mr. Pero, on the brief).
John L. Molinelli, Bergen County Prosecutor, for respondent (Annmarie Cozzi, Assistant Prosecutor, of counsel and on the brief).
Before Judges CARCHMAN, WECKER and WEISSBARD.
The opinion of the court was delivered by
WECKER, J.A.D.
By leave granted, defendant, Michael A. Pero, III, appeals an interlocutory order denying his motion to dismiss this indictment for failure to bring the case to trial within the 180-period required by the Interstate Agreement on Detainers (IAD). We affirm.
New Jersey and Connecticut are party states, along with forty-six other states, the District of Columbia, Puerto Rico, the Virgin Islands, and the United States, to the IAD.[2]Carchman v. Nash, 473 U.S. 716, 719, 105 S.Ct. 3401, 3403, 87 L.Ed.2d 516, 520 (1985). The IAD aims "to encourage the expeditious and orderly disposition of [outstanding] charges and determination of the proper status of any and all detainers based on untried indictments, informations or complaints" by providing cooperative procedures among the party states. N.J.S.A. 2A:159A-1. Under the IAD, where a defendant in one jurisdiction is incarcerated in another jurisdiction, either the prisoner himself (under Article III of the IAD, N.J.S.A. 2A:159A-3) or the prosecutor in the jurisdiction where the charge is pending (under Article IV, N.J.S.A. 2A:159A-4) can initiate proceedings to bring the prisoner to trial. In this case, we deal only with defendant's request under Article III.
N.J.S.A. 2A:159A-3 is New Jersey's enactment of Article III. It provides in pertinent part:
(a) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party State, and whenever during the continuance of the term of imprisonment there is pending in any other party State any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within 180 days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint: provided that for good cause shown in open court, the prisoner or his counsel being present, the court having *43 jurisdiction of the matter may grant any necessary or reasonable continuance. The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the State parole agency relating to the prisoner.
(b) The written notice and request for final disposition referred to in paragraph (a) hereof shall be given or sent by the prisoner to the warden, commissioner of corrections or other official having custody of him, who shall promptly forward it together with the certificate to the appropriate prosecuting official and court by registered or certified mail, return receipt requested.
(c) The warden, commissioner of corrections or other official having custody of the prisoner shall promptly inform him of the source and contents of any detainer lodged against him and shall also inform him of his right to make a request for final disposition of the indictment, information or complaint on which the detainer is based.
[Emphasis added.]
Failure to abide by the time limit set forth in Article III requires dismissal of the indictment as set forth in Article V:
[I]n the event that an action on the indictment, information or complaint on the basis of which the detainer has been lodged is not brought to trial within the period provided in Article III or Article IV hereof, the appropriate court of the jurisdiction where the indictment, information or complaint has been pending shall enter an order dismissing the same with prejudice, and any detainer based thereon shall cease to be of any force or effect.
[N.J.S.A. 2A:159A-5(c).]
A prisoner's request for final disposition pursuant to Article III requires four documents in prescribed form to be submitted to the prosecutor and the court in the "Receiving State," as defined by N.J.S.A. 2A:159A-2, in this case New Jersey.[3] It is the responsibility of the "Sending State," here Connecticut, to send those forms by certified or registered mail, return receipt requested. N.J.S.A. 2A:159A-3(b). The prescribed IAD forms are:

Form 1 - "Notice of Untried Indictment, Information or Complaint and of Right to Request Disposition," to be signed and dated by the warden of the custodial institution where the inmate is held, and then signed and dated by the inmate to acknowledge receipt.

Form 2 - "Inmate's Notice of Place of Imprisonment and Request for Disposition of Indictments, Informations, or Complaints," to be addressed to the Prosecutor in the jurisdiction where a charge is pending, signed and dated by the inmate.

Form 3 - "Certificate of Inmate Status," to be signed and dated by the warden, and to include: (1) The term of commitment under which the prisoner is being held, (2) the time already served, (3) time remaining to be served on the sentence, *44 (4) the amount of good time earned, (5) the date of parole eligibility of the prisoner, (6) the decision of the parole board relating to the prisoner, (7) the maximum expiration date under the present sentence, and (8) Detainers currently on file against this inmate from the same state are as follows.

Form 4 - "Offer to Deliver Temporary Custody," to be signed by the warden.
Instructions printed on Forms 3 and 4 provide that "[I]n the case of an inmate's request for disposition under Article III [N.J.S.A. 2A:159-3(a)], copies of [Forms 3 and 4] should be attached to all copies of Form 2." Handbook, supra, at 127, 128; See also Forms 3 and 4, as adopted both by the New Jersey Department of Corrections (DOC), N.J.A.C. 10A:10-1.4(6), and by the Connecticut DOC.
The question, in light of the Supreme Court's decision in Fex v. Michigan, 507 U.S. 43, 113 S.Ct. 1085, 122 L.Ed.2d 406 (1993), is whether strict compliance with the procedures set forth for initiating the prisoner's Request for Disposition by the receiving state is required in order to trigger the IAD's 180-day time limit and the severe sanction of dismissal, or whether substantial compliance, specifically, delivery of unsigned Forms 3 and 4, if received with proper Forms 1 and 2, is sufficient. We conclude that unsigned Forms 3 and 4 do not warrant exemption from the rule of strict compliance.
Here is the relevant history as appears in the record. On December 28, 2000, a grand jury indicted defendant on charges of first-degree kidnapping, N.J.S.A. 2C:13-1b; first degree robbery, N.J.S.A. 2C:15-1; second-degree aggravated assault, N.J.S.A. 2C:12-1b(1); third-degree theft, N.J.S.A. 2C:20-3; fourth-degree unlawful possession of a knife, N.J.S.A. 2C:39-5d; and third-possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4d. The charges were based on acts allegedly perpetrated on February 5, 2000; defendant's mother was the alleged victim.
Defendant was indicted on these charges in Bergen County on December 28, 2000 and was scheduled to appear for arraignment on January 22, 2001. When he failed to appear, a warrant issued for defendant's arrest. After his subsequent arrest in Connecticut on unrelated charges, the Bergen County Prosecutor forwarded a detainer to Connecticut prison officials.[4] Defendant was sentenced to prison in Connecticut on October 31, 2002.
On November 7, 2002, defendant's informal, handwritten "notice and a request for final disposition," citing Article III of the IAD, was received by the warden of Connecticut's MacDougall-Walker Correctional Institution, where defendant was then held. The warden responded informally on November 14, advising defendant of his right to file for a trial in New Jersey and informing him that "the paperwork will be generated by Records and you will sign the necessary forms with your assigned assessment counselor." On November 19, 2002 defendant signed IAD Forms 1 and 2, provided by the Connecticut DOC as required by N.J.S.A. 2A:159A-3(c), thereby initiating his request for disposition of the New Jersey indictment. Apparently, a "records specialist" in the MacDougall-Walker facility in Connecticut partially completed Forms 3 and 4, which required the warden's signature. But those forms were not signed. The record on appeal includes unsigned Forms 3 and 4, each bearing the typed date November 21, 2002.
*45 The records specialist also prepared cover letters addressed to the Bergen County Prosecutor and the "Clerk of the Court" in Bergen County, dated November 21, 2002, purporting to attach "Forms 2, 3, and 4." Assuming that the appropriate New Jersey authorities received some documents from Connecticut "on or about" November 25, 2002 as defendant claims, he admits that "the records specialist mailed out Form 3 and Form 4 without the warden signing them."
In March 2003, defendant was transferred to a different Connecticut prison, the Garner Correctional Institution. On March 20, 2003, defendant wrote to the Bergen County Prosecutor's office, inquiring as to New Jersey's intention, enclosing a copy of his November 19 request for disposition, and alleging a 180-day deadline from that date to bring him to trial. In response to his request some four months later that Connecticut prison authorities check the status of his request for trial in New Jersey, defendant was permitted to make a telephone call to the court clerk in Bergen County. According to defendant, the clerk told him "all the paperwork is here. We are just waiting for somebody to pick you up. Everything is all set." The court clerk also faxed to defendant copies of the documents received in November from Connecticut. Defendant made copies of those documents, and on March 20, 2003 he sent a packet of material to both the Bergen County Prosecutor and the court clerk. He asked to be informed "of the intention of the State of New Jersey regarding these outstanding matters." Finally, completed and signed Forms 3 and 4 were sent by Garner prison personnel in April and received by the Bergen County Prosecutor on April 10, 2003.
The State now appears to admit it received Forms 1 and 2, signed by defendant, in November 2002.[5] The record includes unsigned copies of cover letters from the Connecticut DOC to the Bergen County Prosecutor and to the "Clerk of Court, Bergen County," dated November 21, 2002, referring to "[a]ttached" "I.A.D. Forms 2, 3, 4." The record also includes unsigned copies of Forms 3 and 4, dated November 21, 2002, certifying defendant's commitment to MacDougall-Walker and his incarceration for the preceding 853 days. However, the only signed Forms 3 and 4 are dated April 3 and 2, respectively, and certify defendant's then current commitment at Garner and his incarceration in Connecticut for the preceding 1041 days. The State plainly did not receive Forms 3 and 4, signed by the warden, until after April 3.[6]
For purposes of this motion, and our review, we will assume that the State received unsigned copies of Forms 3 and 4 in November. Thus the only issue before us is whether the 180-day period prescribed by the IAD was triggered by the Prosecutor's receipt of signed Forms 1 and 2 and unsigned Forms 3 and 4 in November, or whether the State's time to bring defendant to trial ran only from its April 10 receipt of all four completed forms, including *46 those signed by the Connecticut authority on April 2 and 3.
The history thereafter is not in issue. The Law Division judge remanded defendant without bail on June 9, 2003. On July 10, the judge ordered a psychiatric exam to determine defendant's competence to stand trial, to represent himself, to waive an insanity defense, and whether he was a danger to himself or others. An August 11 trial date was set in that order. The record indicates that on August 11, the court accepted a psychiatric report determining defendant's competence to stand trial and to represent himself, and that he was not a danger to himself or others.
Defendant's motion to dismiss pursuant to the IAD also was argued on August 11, at which time the judge set September 9 for a status review and September 29 as the trial date. The judge's written letter decision denying defendant's motion was dated September 16, 2003.[7] The motion judge found that April 10, 2003 was the date that triggered the 180-day window within which the State had to bring defendant to trial under Article III.
The thrust of defendant's argument in the Law Division in support of his motion to dismiss the indictment was that the IAD required New Jersey to bring him to trial within 180 days of receiving his request for "final disposition"; that he submitted the required written form request to invoke the IAD to Connecticut prison authorities on November 19, 2001; that certain of the required forms were mailed to the Bergen County Prosecutor's office on November 21, 2002 and received in that office on November 25, 2002; that he was not brought to court in New Jersey until June 9, 2003; and that because he was not brought to trial within 180 days of his request,[8] the indictment must be dismissed.
The Bergen County Prosecutor opposed defendant's motion on the ground that he did not receive the four required forms that constitute a completed IAD request until April 10, 2003, and that his office acted within 180 days thereafter to bring defendant to trial. The State argued:
We can't initiate an [IAD] procedure unless we have the form, which is the "Certificate of Inmate Status," articulating that, what he's charged with, and what he has to serve, and how much is left. Most importantly we need the form which is called the "Offer to Deliver Temporary Custody" signed by the warden.
The State contends that "there may very well have been an error that occurred up in the correctional institution in Connecticut [in November]. But that's not chargeable to us." If fully signed forms were not required, according to the State,
[i]t would be too easy for the defendants to circumvent the system, and have cases dismissed.... [The 180 days] doesn't start until we get all complete paperwork, that is the documents signed by the wardens. Because there's check *47 and balances within the criminal institution, and there's ways to force them to do things by signing a writ of mandamus to mandate that they, in fact, process that paperwork.
Defendant argued that even though his own investigator concluded "that Connecticut dropped the ball, ... Bergen County dropped the ball too." According to defendant, the Prosecutor, on receiving defendant's signed Forms 1 and 2 with only unsigned Forms 3 and 4, was required to take steps to contact the Connecticut prison and obtain signatures, and not simply treat the request as "incomplete." Otherwise, according to defendant, a bad warden could intentionally subvert an inmate's trial request by failing to sign the forms. The judge accepted the State's position.
On appeal, defendant presents these arguments:
POINT I
DEFENDANT FULFILLED ALL TECHNICAL REQUIREMENTS OF ARTICLE III OF THE I.A.D. AND CANNOT BE SADDLED WITH THE CONSEQUENCES OF OFFICIAL MISUNDERSTANDINGS OR ERRORS.
POINT II
WARDEN NOT SIGNING I.A.D. FORMS 3 AND 4 DOES NOT VIOLATE LETTER OF THE I.A.D. AND DOES NOT VIOLATE RIGHTS OF PRISONER UNDER N.J.S.A. 2A:159 A-4(d).
POINT III
TRANSFERRING OF CUSTODY BEGINS ONCE A REQUEST BY THE PRISONER OR BY THE JURISDICTION SEEKING CUSTODY IS LODGED; AND NOTHING BUT THE PRISONERS [sic] INABILITY TO STAND TRIAL CAN TOLL THE 180 DAY PERIOD OF THE I.A.D.
POINT IV
NEW JERSEY DID NOT CONTINUE THEIR [sic] EFFORT TO OBTAIN DELIVERY OF PRISONER WITH DILIGENCE OR DISPATCH ONCE A "REQUEST" HAS BEEN LODGED.
POINT V
I.A.D. PAPERWORK IS STILL INVALID AS FORMS 1 AND 2 ARE FROM NOVEMBER OF 02' [sic] AND FORMS 3 AND 4 ARE FROM APRIL 03' [sic]
POINT VI
ORIGINAL MOTION WAS DENIED BASED VERBATIM ON RETRACTED AND AMENDED ARGUMENT
We have carefully considered the record and the briefs in light of applicable law. We are convinced that the 180-day period prescribed by Article III of the IAD began to run only when New Jersey authorities received completed and signed Forms 3 and 4 on April 10, 2003.[9] We therefore affirm the order denying defendant's motion to dismiss the indictment.
Our research has not revealed any case in any state or federal jurisdiction addressing the specific question before us: whether receipt of a prisoner's Request for Disposition (Form 2), accompanied by unsigned copies of Form 3 and/or Form 4, constitutes an effective request for disposition that triggers the 180-day period. We therefore look to the underlying purpose *48 of the IAD and judicial interpretations of its requirements to inform our decision.
As a "congressionally sanctioned interstate compact," the interpretation of the IAD "presents a question of federal law." Cuyler v. Adams, 449 U.S. 433, 442, 101 S.Ct. 703, 709, 66 L.Ed.2d 641 (1981). "[T]he IAD comes within the Compact Clause of the U.S. Constitution, art. I, § 10, cl. 3 (`No State shall, without the Consent of Congress, ... enter into any Agreement or Compact with another State....'), and is thus a federal law subject to federal interpretation." U.S. v. Paredes-Batista, 140 F.3d 367, 372 n. 9 (2d Cir.), cert. denied, 525 U.S. 859, 119 S.Ct. 143, 142 L.Ed.2d 116(1998). Federal court interpretations of the IAD, which was enacted in virtually identical form by Congress, 18 U.S.C.A. App. 2, as well as by New Jersey and Connecticut, is binding upon state courts. E.g., Peterson v. State, 139 Idaho 95, 73 P.3d 108, 112 (Ct.App.2003); Commonwealth v. Wilson, 399 Mass. 455, 504 N.E.2d 1060 n. 10 (1987); State v. Winnie, 174 Vt. 626, 816 A.2d 545, 547 (2002) (citing New York v. Hill, 528 U.S. 110, 120 S.Ct. 659, 145 L.Ed.2d 560 (2000), and following Fex).
In Fex v. Michigan, supra, 507 U.S. at 43, 113 S.Ct. at 1085, 122 L.Ed.2d at 406, a majority in the Supreme Court resolved the question whether the Article III 180-day period began to run on the date the prisoner's request for trial was mailed by the sending state, or on the date it was received by the prosecutor in the receiving state. The Court parsed the meaning of the phrase "within one hundred and eighty days after he shall have caused to be delivered," as it appears in Article III (and in N.J.S.A. 2A:159A-3(a)), and held that "delivery is the key concept." Id. at 49, 113 S.Ct. at 1089, 122 L.Ed.2d at 414 (emphasis added). The Court rejected the argument that the phrase "caused to be delivered" referred to the date the prisoner initiated the process by submitting his request to the prison authorities in the sending state.
The Supreme Court addressed the practical effect of the two interpretations and considered the "worst case scenario" under each. Whereas the Court recognized that the actions of a malicious or careless warden under a delivery-date rule would produce a bad result in that a prisoner might "spend several hundred additional days under detainer" with a concomitant delay in reaching trial, the Court nevertheless concluded that a mailing-date rule would produce a worse result: "the prosecution will be precluded before the prosecutor even knows it has been requested." 507 U.S. at 50, 113 S.Ct. at 1090, 122 L.Ed.2d at 414. While the Court's decision in Fex v. Michigan does not resolve the precise question raised in this case, that is, whether receipt of unsigned Forms 3 and 4 trigger the 180-day limit, its rationale supports our decision.
Well before the Supreme Court decided Fex, we held that the 180-day time limit was triggered only by receipt of the requisite request forms by the New Jersey prosecutor and the New Jersey court, and not by the prisoner's delivery of a request to out-of-state prison authorities. State v. Ternaku, 156 N.J.Super. 30, 34, 383 A.2d 437, 439 (App.Div.), certif. denied, 77 N.J. 479, 391 A.2d 494 (1978). Our rationale in Ternaku was much like that later expressed by the Supreme Court in Fex.
In our view it would be contrary to the public interest to start the running of the 180-day period prior to actual receipt of the notice and request by the prosecutor and the court. If we were to interpret the statute as defendant requests, an indictment would be subject to dismissal each time delivery of the documents to the prosecutor and court is delayed, regardless of cause. We cannot *49 conceive our Legislature as intending such a result by enacting the Interstate Agreement on Detainers.
[Ibid.]
See also State v. Stiles, 233 N.J.Super. 299, 558 A.2d 1333 (App.Div.1989) (requiring "strict" compliance with the IAD's prescribed procedures and holding that receipt of unsigned Form 2, without a "certificate of inmate status" [Form 3], does not trigger the 180-day deadline).
In a case that pre-dated Fex, a district court judge denied a writ of habeas corpus alleging a violation of the IAD by New Jersey authorities. Johnson v. Cuyler, 535 F.Supp. 466 (E.D.Pa.1982) (denied for failure to exhaust state remedies), aff'd, 714 F.2d 123 (3d Cir.1983). Defining the State's obligation under the IAD, the court said: "The state must bring an inmate to trial within 180 days after its receipt of a proper request for disposition under Article III." Id. at 474. The question before us, of course, is what constitutes "a proper request."
In another decision pre-dating Fex, the Third Circuit affirmed the denial of a habeas corpus petition that was based on an alleged violation of the IAD. Casper v. Ryan, supra, 822 F.2d at 1283. In its opinion, the court reviewed the procedure for a prisoner to initiate trial in another state and emphasized the importance of Forms 3 and 4:
Article III(a) of the IAD requires that the request of the prisoner for final disposition "shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decision of the State parole agency relating to the prisoner," which is the same language used in Article IV(b) to describe the information needed. Forms 3 and 4, which are used when proceedings have been initiated by the prosecutor from another jurisdiction under Article IV, must also be attached to Form 2, used when an inmate requests disposition under Article III.

[Id. at 1285 (emphasis added).]
In Casper, a Florida prisoner sent a notarized letter to the Philadelphia District Attorney's office, but his letter did not include Form 3, "which the statute provides must accompany the prisoner's request for disposition of outstanding charges." Id. at 1285-86. The court found "persuasive reasons for requiring a prisoner to comply with the procedures required by Article III(a) as a predicate for invoking Article V(c)'s severe sanction of dismissal with prejudice." Id. at 1292. Nonetheless, in dictum, the court suggested that "[s]trict compliance with Article III may not be required when the prisoner has done everything possible, and it is the custodial state that is responsible for the default." Id. at 1293. We question the viability of that suggestion after Fex.
In United States v. Dent, 149 F.3d 180 (3d Cir.1998), the Third Circuit addressed the dictum in Casper with respect to a prisoner's obligation to comply strictly with Article III. The Court held that the prisoner's letter request for disposition did not trigger the 180-day limit because he omitted information concerning "his term of commitment, the time already served, the time remaining to be served on his sentence, or any information concerning good-time credits or parole eligibility" (the very information normally provided on Form 3). This was so even though the prosecutor already had most of the information, and even though the prison warden had failed to meet his obligations under *50 Article III. Id. at 186-87. The court nonetheless recognized, as it had in Casper, a potential exception to the rule of strict compliance if the prisoner can show that "she/he substantially complied to the extent possible." Id. at 187 (quoting Casper v. Ryan, supra, 822 F.2d at 1293). We do not find circumstances here that warrant such a theoretical exception.
We reject defendant's reliance on the district court opinion in Nash v. Carchman, 558 F.Supp. 641 (D.N.J.1983) (writ of habeas corpus issued), aff'd, Nash v. Jeffes, 739 F.2d 878 (3d Cir.1984), rev'd on other grounds, Carchman v. Nash, 473 U.S. 716, 105 S.Ct. 3401, 87 L.Ed.2d 516 (1985). In Nash v. Carchman, the district court judge recognized that "[o]rdinarily, a prisoner must comply with all the formal prerequisites of Article III to trigger the Agreement's 180-day period," but found that the prisoner had received incorrect advice from several New Jersey authorities respecting his rights and obligations under the IAD. The judge concluded that "technical compliance is unnecessary if, through no fault of his own, a petitioner fails to meet all the Article III requirements." Id. at 650. The district court opinion in Nash does not square with Fex.
Several circuit courts have rejected defense motions to dismiss an indictment for IAD violations, even where either prison officials or procedures have impeded a prisoner's ability to request disposition. In United States v. Paredes-Batista, supra, 140 F.3d at 375-76, the Second Circuit held that despite the inadequacy of the federal government's form speedy trial request, which did not inform the defendant of the IAD's delivery requirement, and even though the defendant, "incarcerated in state prison, would not have been in a position to personally ensure delivery to either [the prosecutor or the court], informing him of these prerequisites would at least have permitted him to monitor and police his speedy trial rights." Id. at 373. In several cases involving prison officials' failure to provide a defendant with the Article III notice of his right to seek disposition in another jurisdiction, courts have declined to extend the dismissal sanction, reading the IAD narrowly and limiting that remedy to prosecutorial failure to act after receiving a prisoner's request. See, e.g., United States v. Lualemaga, 280 F.3d 1260, 1263-64 (9th Cir.), cert. denied, 536 U.S. 949, 122 S.Ct. 2641, 153 L.Ed.2d 820 (2002); United States v. Walker, 255 F.3d 540, 542-43 (8th Cir.2001); United States v. Pena-Corea, 165 F.3d 819, 821-22 (11th Cir.1999); Lara v. Johnson, 141 F.3d 239, 243 (5th Cir.1998) ("[D]ismissal because of negligence on the part of the sending state is not a part of the IAD"), mod. on other grounds, 149 F.3d 1226 (5th Cir.1998).
In Pena-Corea, supra, the court said: "The question here is whether the Government should be held responsible for the state custodian's failure to serve Pena with the federal detainer and to advise him of his right to demand a trial. We think not." 165 F.3d at 821. Compare United States v. Johnson, 196 F.3d 1000 (9th Cir. 1999), where the Ninth Circuit held that delivery of the prisoner's request for disposition to the Marshal's Service constituted delivery to the U.S. Attorney, and his public defender's letter to the court seeking appointment to represent defendant was sufficient notice to the court under the IAD.
In State v. Millett, 272 N.J.Super. 68, 107, 639 A.2d 352, 372 (App.Div.1994), one of the few New Jersey cases interpreting the IAD after Fex, we affirmed a trial court order denying the defendant's motion to dismiss a murder indictment for failure to bring the defendant to trial within the required time period.[10] We found *51 that time was tolled pursuant to N.J.S.A. 2A:159A-6(a).[11] We relied on State v. Lippolis, 55 N.J. 354, 262 A.2d 203 (1970), rev'g on dissent 107 N.J.Super. 137, 257 A.2d 705 (App.Div.1969), for the proposition that "the focus of the inquiry ... is the conduct and intent of the prosecutor: did the prosecutor cause the delay due to an error or misunderstanding, or by his inaction, or did he otherwise evidence an intention not to diligently pursue the case?" Millett, supra, 272 N.J.Super. at 105, 639 A.2d at 371.
On the one hand, we said: "The consequences of official misunderstandings, or administrative errors and negligence, should not be visited on the prisoner who is blameless." Millett, supra, 272 N.J.Super. at 105, 639 A.2d at 371 (citing State v. Mason, 90 N.J.Super. 464, 470, 218 A.2d 158, 162 (App.Div.1966)). On the other hand, after noting various reasons for the delay in that case, we found "no indication that the prosecutor was dilatory." Id. at 107, 639 A.2d at 372. We also noted that the defendant was not "prejudiced by the delay, either through unavailable witnesses or through lost evidence." Ibid. Our emphasis should be, as in Millett, on the conduct of the prosecutor rather than the conduct of prison officials when dismissal of an indictment under the IAD is at stake.
In State v. Moreau, 287 N.J.Super. 179, 183, 670 A.2d 608, 610 (Law Div.1995) (dismissing an indictment before the IAD's 180-day period has run where prosecutor has expressed the clear intention not to bring the defendant to trial within that period), the court recognized that "[g]enerally, courts have required strict compliance with the notice provisions of Article III." To the extent, however, that dictum in Moreau suggests that "administrative error or mistake" solely on the part of the sending state (here, Connecticut) might permit invocation of the doctrine of substantial compliance, we disagree.
It is of course true that the IAD provides that it "shall be liberally construed so as to effectuate its purposes." N.J.S.A. 2A:159A-9. The stated purposes of the IAD are "to encourage the expeditious and orderly disposition" of charges against "persons already incarcerated in other jurisdictions" and "to provide ... cooperative procedures" among its party states to that end. N.J.S.A. 2A:159A-1. We do not, however, interpret the prescribed liberal construction of the compact to mean that courts must favor the prisoner by applying the doctrine of substantial compliance. See State v. Moe, 581 N.W.2d 468, 472 (N.D.1998) ("Strict compliance with the notice provisions of the IAD is required.... [A]ctual notice of the prisoner's request alone does not put the State on notice of the information that would be included in the certificate of the official having custody of the prisoner." Id. at 471.)
We recognize that a prisoner has limited power to insure his warden's efficient and complete cooperation with the requirements of the IAD. Nonetheless, it does not seem unduly harsh to place both practical and legal burdens on the prisoner who seeks to force another jurisdiction to bring *52 him to trial within 180 days, on threat of dismissal for failure to meet that deadline.
The practical burden on the prisoner is to follow up his attempted delivery of a complete disposition request, that is, Forms 2, 3, and 4, by periodically checking with the warden and the out-of-state prosecutor. See, e.g., State v. Winnie, supra, 816 A.2d at 547. The legal burden upon a defendant is to prove actual receipt by the prosecutor and the court in the State where the inmate seeks a prompt disposition. Most jurisdictions that have considered the placement of either of those burdens since Fex have held that it is the defendant's burden to follow up on delivery and to prove receipt of the required forms. E.g., Morganfield v. State, 919 S.W.2d 731, 734 (Tex.App.1996); Yiaadey v. Commonwealth, 29 Va.App. 534, 513 S.E.2d 446, 451 (1999); Peterson v. State, supra, 73 P.3d at 112.
There is no reason to think that by joining the compact, the New Jersey Legislature or any other party state's legislature intended to allow its own prosecution of a defendant to be at risk, solely based upon the efficiency or inefficiency of prison officials in other states. See Yiaadey v. Commonwealth, supra, 513 S.E.2d at 451 n. 8. The intent and rationale for enacting the IAD was to counter the perceived evil when prosecutorial delay or inattention fail to provide a defendant incarcerated in another jurisdiction an opportunity for prompt disposition of charges. Such delay potentially prejudices a prisoner's opportunities and even his potential for concurrent sentences.
It does not serve either the legislative intent behind the IAD, or the public interest, for courts to dismiss an indictment where the prosecuting authority is not in violation of the compact. The deterrent effect of the IAD is not impaired by this recognition. The prosecutor remains at risk of dismissal for an unwarranted delay after receiving a valid, complete application for disposition.
We decline to impose upon the prosecution in the receiving state a greater duty than that expressly required by the IAD itself. See State v. Treece, 129 N.C.App. 93, 497 S.E.2d 124, 125 (following Fex and holding that "this language [of Fex] cannot be interpreted as requiring the district attorney to inquire as to whether a defendant has mailed written notice of his request for final disposition of his case"), appeal dismissed, review denied, 348 N.C. 290, 501 S.E.2d 924 (1998). We therefore reject defendant's contention that the Bergen County Prosecutor had an affirmative duty to investigate and seek more complete information, assuming unsigned IAD forms were received in November.
Neither the State nor the prisoner appears to have been responsible for the delay here; a lack of attention on the part of the Connecticut prison authorities at the MacDougall-Walker facility prevented prompt completion of the required forms and their delivery to the Bergen County Prosecutor and the court in November 2001. Unquestionably, it would have been appropriate and indeed salutary for the prosecutor's office to inquire of the Connecticut prison authorities if incomplete or unsigned Forms 3 and 4 were received along with the prisoner's request for disposition. We merely stop short of holding that the prosecutor's failure to make inquiry in this case results in the running of time under Article III.[12]
We are convinced that an effective Form 2 request for disposition must include *53 completed and signed Forms 3 and 4, and that the IAD demands strict compliance with its procedures. For example, it has been held that where proper forms were delivered to the prosecutor but not to the court in the receiving state, the Article III time limit was not triggered. State v. Winnie, supra, 816 A.2d at 547 (Fex requires strict compliance); State v. Somerlot, 209 W.Va. 125, 544 S.E.2d 52, 59 (2000) (noting that jurisdictions that recognized substantial compliance prior to Fex now require strict compliance). Likewise, where the court but not the prosecutor received the required forms, the time limit also was not triggered. See Peterson v. State, supra, 73 P.3d at 111 (on post-conviction relief).
Incomplete prisoner requests for disposition under the IAD have been held insufficient to trigger the 180-day time limit of Article III in many jurisdictions, some even before Fex. E.g., Gearheart v. Wallace, 964 F.Supp. 205, 209 (E.D.Va.1997), aff'd, 145 F.3d 1324 (4th Cir.1998); State v. Burks, 631 N.W.2d 411, 413-14 (Minn.Ct. App.2001); State v. Moe, supra, 581 N.W.2d at 471; Eckard v. Commonwealth, 20 Va.App. 619, 460 S.E.2d 242, 246 (1995); State v. Nearhood, 2 Neb.App. 915, 518 N.W.2d 165, 170 (1994).[13]
Defendant argues before us that "the failure of the warden to sign the last two documents [in November] is irrelevant because I can't be denied my rights once I get my notice." We disagree. We are satisfied that an individual who is incarcerated in another state that is a party to the IAD is adequately protected by the opportunity to check on the status of his own request, as defendant did here, and thereby to discover any failure to act in a timely fashion. The triggering date for New Jersey's 180-day time limit in this case, as the Law Division judge found, was April 10, 2003, the earliest date the evidence established that defendant's completed application, including all required, signed forms, was received by Bergen County authorities.[14]
Affirmed and remanded for trial.
NOTES
[1] Mr. Kalisch was defendant's court-ordered standby counsel on the motion.
[2] The IAD is codified at 18 U.S.C.A. App. 2 (printed following 18 U.S.C.A. § 6005), in New Jersey at N.J.S.A. 2A:159A-1 to -15, and in Connecticut at Conn. Gen.Stat. § 54-186. The statutes are virtually identical. For convenience, we will cite to the New Jersey statute.
[3] Standard forms were adopted as part of the implementing rules and regulations for effectuating the IAD. See The Council of State Governments, The Handbook on Interstate Crime Control 125-33 (1978) (Handbook). The IAD forms have been adopted for use in all proceedings under the IAD in jurisdictions that are signatories to the compact. Casper v. Ryan, 822 F.2d 1283, 1285 n. 2 (3d Cir.1987), cert. denied, 484 U.S. 1012, 108 S.Ct. 714, 98 L.Ed.2d 664 (1988).
[4] The Prosecutor apparently faxed a detainer, that is, a notice of pending charges, along with a copy of the January 22, 2001 arrest warrant, first on January 31, 2001 and again on September 18, 2001.
[5] The assistant prosecutor appears to have apologized to the court for a misstatement in his brief, in which he had said that the State received only Form 1, and not Form 2, in November, although in later argument he claims only to have admitted that defendant signed Form 2 in November. The distinction is not material to our decision.
[6] The signed copies of Forms 3 and 4 in the record appear under the heading of the Garner prison facility, to which defendant was moved for the first time in March 2003, whereas the unsigned Forms 3 and 4 bore the heading of the MacDougall-Walker facility, where defendant was incarcerated in November 2002.
[7] Although we cannot determine from the record how the judge came to reschedule the trial thereafter to December 24, defendant does not contend that he is entitled to dismissal based on proceedings after June 9 or any subsequent adjournment.

We have previously held that the State may seek a continuance even after expiration of the 180-day period, so long as an order dismissing the indictment has not yet been entered. State v. Miller, 299 N.J.Super. 387, 397, 691 A.2d 377, 382 (App.Div.1997) (citing State v. Lippolis, 107 N.J.Super. 137, 147, 257 A.2d 705, 711 (1969) (Kolovsky, J.A.D., dissenting), rev'd on dissent, 55 N.J. 354, 262 A.2d 203 (1970)), certif. denied, 151 N.J. 464, 700 A.2d 877 (1997).
[8] Counting from November 25, the 180th day would have been May 24, 2003.
[9] If we were to deem actual receipt of unsigned Forms 3 and 4 sufficient to start the running of time to begin trial, we would remand for a plenary hearing on the question whether those unsigned forms actually were received by the prosecutor and the court in November 2002. Because we hold to the contrary, that only forms signed by the prison authorities are sufficient to complete the inmate's request and trigger the 180-day period under Article III, no such hearing is necessary or warranted.
[10] In Millett, it was the State, pursuant to Article IV of the IAD, that sought the defendant's return to New Jersey to face trial, thus requiring trial to "be commenced within 120 days of the arrival of the prisoner in [New Jersey]." N.J.S.A. 2A: 159A-4(c).
[11] In State v. Miller, supra, 299 N.J.Super. 387, 691 A.2d 377, we also held that the 180-day time limit was tolled while defendant was tried on another New Jersey indictment, as well as during the period defendant was not represented by counsel and therefore could not stand trial. N.J.S.A. 2A:159A-6. No issue of strict compliance with the IAD request forms was involved.
[12] We offer no opinion as to whether a greater duty should be placed upon a Prosecutor who has initiated a request (under Article IV of the IAD) to deliver the defendant to New Jersey (as compared with the prisoner-initiated request under Article III in this case).
[13] The IAD also directs that the requisite forms be transmitted by the prison authorities "by registered or certified mail, return receipt requested." N.J.S.A. 2A:159A-3(b). The failure to use certified or registered mail has not, however, been held fatal to the prisoner's claim under the IAD. Casper v. Ryan, supra, 822 F.2d at 1293. The use of mail that provides a return receipt, however, avoids a proof problem; in fairness to the prisoner, it should be used by the sending state.
[14] We find no merit in the argument raised in Point 5 of defendant's pro se brief, to the extent we understand it, that the indictment also must be dismissed because "the states [sic] current I.A.D. paperwork is a hybrid of November 02' [sic], (Forms one and two) and April 03' [sic], (Forms three and four). Therefore the I.A.D. application is invalid as ALL of the paperwork must be re-signed and re-submitted not just a portion of the paperwork." See R. 2:11-3(e)(2).