64 A.3d 1030

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. JOHN J. PERRY, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted December 4, 2012—Decided May 10, 2013.

Before Judges ALVAREZ, WAUGH and ST. JOHN.

*Joseph E. Krakora,* Public Defender, attorney for appellant (*Stephen W. Kirsch,* Assistant Deputy Public Defender, of counsel and on the brief).

*Richard T. Burke,* Warren County Prosecutor, attorney for respondent (*Dit Mosco,* Assistant Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by

ALVAREZ, J.A.D.

In this appeal, we are asked to dismiss with prejudice New Jersey charges under the Interstate Agreement on Detainers (IAD), *N.J.S.A.* 2A:159A–1 to –15, because Pennsylvania refused to allow a Pennsylvania parole violator to be brought to this state for nearly two years pursuant to that state's Department of Corrections policies. *See* Pa. Dep't of Corr., *Records Center Operations Procedure Manual,* 11.5.1, § 5B(4) (2003). Because the two-year delay which resulted is not one of the enumerated instances requiring dismissal under the IAD, and no public policy or legislative purpose would be advanced by dismissal, we affirm the trial court's refusal to do so.

A brief discussion of the circumstances leading to the disposition of defendant John J. Perry's charges in New Jersey is necessary. On November 21, 2007, defendant was arrested in Monroe County, Pennsylvania, on new charges. At the time, he was on parole in that state due to prior convictions. Because of the new offenses, Pennsylvania placed him on parole violation pending (PVP) status effective November 30, 2007.

In December 2007, Warren County filed criminal complaints against defendant; the ensuing indictment was handed down on May 21, 2008, and included twenty-seven third-degree counts of car burglary, *N.J.S.A.* 2C:18–2, two counts of third-degree theft, *N.J.S.A.* 2C:20–3, and one count of third-degree receiving stolen

property, *N.J.S.A.* 2C:20–7. Early in 2008, Warren County had requested that Pennsylvania lodge the New Jersey warrants as a detainer against defendant. Warren County also requested that it be notified when defendant could be transported to New Jersey pursuant to the IAD. Thereafter, defendant also communicated with various prison authorities regarding his interest in addressing his New Jersey charges. It is undisputed that he was informed that because of his PVP status, he was not eligible to be transferred out of state to deal with open charges in New Jersey. In fact, defendant filed an inmate grievance with the Pennsylvania authorities regarding this refusal to release him in September 2008.

Defendant was advised that he could be extradited to other states under a governor's warrant and executive agreement, or a waiver of extradition. When New Jersey attempted to secure defendant's presence in that manner, however, at a hearing conducted April 16, 2009, defendant had a change of heart and refused to waive extradition, asserting that he wanted to remain in Pennsylvania until that state's charges were resolved.

The following month, the Warren County Prosecutor's Office attempted to obtain defendant's transfer to New Jersey by way of a governor's requisition and executive agreement. It also sent a request for temporary custody under the IAD, which request was denied because of defendant's continued PVP status. The Warren County authorities were informed that only extradition would suffice, but that at his April 16, 2009 hearing, defendant had refused to waive extradition.

Defendant filed federal habeas corpus petitions in Pennsylvania and New Jersey, as well as a Pennsylvania state habeas corpus petition on August 4, 2009. As a result of his state petition, on October 1, 2009, a Pennsylvania state court judge dismissed defendant's New Jersey detainer, and entered a parole order directing the Pennsylvania authorities to release him. The Warren County authorities were not informed of defendant's release.

Meanwhile, during this time period, the Warren County Prosecutor's Office sent a letter to the New Jersey Governor's Office requesting a requisition for defendant's extradition. The Pennsylvania Office of General Counsel attempted to act upon the warrant obtained from the Governor of Pennsylvania. Since defendant was not in custody, however, nothing further could be done. From October 8, 2009, through April 20, 2010, although defendant was not in custody, he did not appear in New Jersey.

On April 20, 2010, defendant was arrested and held in Pennsylvania on a fugitive from justice warrant issued on the Warren County indictment. On May 14, 2010, defendant wrote to the Warren County Prosecutor's Office, requesting that he be transported to resolve his charges.

On July 6, 2010, the Pennsylvania Department of Corrections finally cleared defendant's PVP status, recommitting him to serve twelve months retroactive to April 20, 2010. It is not clear from the record whether defendant, from that date to August 10, 2010, filed any of the necessary paperwork under the IAD to secure his return to New Jersey.

It is known, however, that between August 11 and August 24, 2010, officials at the Pennsylvania State Correctional Institution at Dallas documented defendant's refusal to sign IAD Form 1, which would have initiated his transfer to New Jersey. As a result, on August 30, 2010, the Warren County Prosecutor's Office sent a request for temporary custody under Form 5 of the IAD. On October 8, 2010, an IAD pretransfer hearing was conducted in Luzerne County, Pennsylvania, and defendant was transferred to Warren County on November 18, 2010.

On February 3, 2011, defendant filed a motion in New Jersey to dismiss his charges on the basis that Warren County had failed to comply with the IAD. Defendant eventually pled guilty, however, to all twenty-seven counts in the New Jersey indictment on June 29, 2011, and was sentenced on July 20, 2011. He was credited with ninety-one days which accrued from April 20, 2011, the day

after the completion of his Pennsylvania sentence, until July 20, 2011, the time he was sentenced in New Jersey.

When sentenced to three years imprisonment pursuant to the plea agreement with the State, defendant was also required to pay $475 in restitution. At sentencing, trial counsel said the following: "I know there's a $475 restitution number the State has provided me with, and I don't think that there's ... any kind of an argument with that. It's a very fair number. Judge, I think it's a very fair plea agreement in light of the fact that it's a three flat offer for [thirty] car burglaries...." Defendant, although he directly engaged in a relatively lengthy discussion with the court and counsel regarding his status vis-à-vis his Pennsylvania sentence, did not object to the amount of restitution.

On appeal, defendant raises the following points for our consideration:

POINT I

THE LAW [] DIVISION JUDGE ERRED BY REFUSING TO DISMISS THE CHARGES AGAINST DEFENDANT FOR EITHER OF TWO SIGNIFICANT VIOLATIONS OF THE INTERSTATE AGREEMENT ON DETAINERS

POINT II

THE MATTER OTHERWISE NEEDS TO BE REMANDED FOR RECALCU-LATION OF JAIL CREDIT AND EVALUATION OF DEFENDANT'S ABILI-TY TO PAY RESTITUTION

Interpretation of the IAD presents a question of federal law. *State v. Pero*, 370 *N.J.Super.* 203, 214, 851 *A.*2d 41 (App.Div. 2004). The IAD "creates uniform procedures for lodging and executing a detainer, i.e., a legal order that requires a State in which an individual is currently imprisoned to hold that individual when he has finished serving his sentence so that he may be tried by a different State for a different crime" and "provides for expeditious delivery of [a] prisoner to [a] receiving State for trial prior to the termination of his sentence in [a] sending State." *Alabama v. Bozeman*, 533 *U.S.* 146, 148, 121 *S.Ct.* 2079, 2082, 150 *L.Ed.*2d 188, 192 (2001).

The federal government and forty-eight states, including New Jersey, are signers of the compact. *Ibid.* The IAD's purpose is

"to encourage the expeditious and orderly disposition of such [outstanding] charges and determinations of the proper status of any and all detainers based on untried indictments, informations or complaints" and to provide "cooperative procedures" for making such determinations. 18 *U.S.C.A.* app. 2, § 2, art. I; *N.J.S.A.* 2A:159A–1.

■ Defendant's first request under the IAD was made in August 2008. He continued intermittently to seek to be transported to New Jersey pursuant to the IAD, eventually filing habeas corpus petitions in both federal and Pennsylvania state court. But contrary to those efforts, he refused to waive extradition and be brought to New Jersey under the IAD in April 2009.

Unquestionably, where a detainer is lodged, a defendant not brought to trial within the statutory 180–day time limit is entitled to dismissal of his or her charges. *See N.J.S.A.* 2A:159A–3. Unfortunately for this defendant, however, he was in custody in a sending state on terms which did not allow him to take advantage of the procedures available under the compact.

Even where the failure of the sending state to comply with IAD process is attributable to administrative negligence or oversight, that does not suffice to compel the dismissal of charges. *Pero, supra,* 370 *N.J.Super.* at 221–22, 851 *A.*2d 41. Certainly no public interest or legislative intent is advanced, relative to the expeditious disposition of charges in a receiving state, by punishing a prosecuting authority in the receiving state for the collateral effects of the presumably lawful policy being implemented by a sending state. In other words, New Jersey should not be punished for the consequences of defendant's status as a Pennsylvania parole violator.

■ The 180–day statutory limit found in *N.J.S.A.* 2A:159A–3 is also inapplicable because defendant refused to waive extradition. That section of the IAD provides that any request for final disposition made by a prisoner is considered a waiver of extradition after the completion of a defendant's custodial sentence in the

sending state. *N.J.S.A.* 2A:159A–3(e). Nonetheless in order to make an effective request, the prisoner must substantially comply with the technical requirements of Article III. *State v. Hoimes,* 214 *N.J.Super.* 195, 203–04, 518 *A.*2d 773 (App.Div.1986). Additionally, where a prisoner's failure to comply with technical requirements is caused by his own omissions, dismissal is improper. *Id.* at 204, 518 *A.*2d 773.

In this case, defendant refused to sign a request for disposition when presented with the appropriate forms in August 2010. Defendant while in court and on the record expressed his desire to remain in Pennsylvania until his Pennsylvania charges were resolved and refused to waive extradition. Consequently, Warren County's inability to comply with the IAD timeline was attributable to defendant's conduct.

Furthermore, contrary to defendant's position, no violation of the 120–day statutory limit occurred. The clock did not begin to run until he was transferred to Warren County on November 18, 2010. Although the 120 days would have ended in March 2011, the court granted several continuances, including one accommodating defendant's motion for reconsideration. *See N.J.S.A.* 2A:159A–4(c); *State v. Miller,* 299 *N.J.Super.* 387, 397, 691 *A.*2d 377 (App.Div.), *certif. denied,* 151 *N.J.* 464, 700 *A.*2d 877 (1997) (explaining that New Jersey law allows continuances at any time before entry of an order of dismissal under *N.J.S.A.* 2A:159A–5(c)). With both parties' consent, the final continuance extended until August 1, 2011, in order "to try this case." Accordingly, defendant entered his guilty plea to his New Jersey charges within the prescribed time limits.

Defendant was transferred under Article IV of the IAD statute because he had become a sentenced defendant once his PVP status ended. A hearing was conducted in Pennsylvania pursuant to *Cuyler v. Adams,* 449 *U.S.* 433, 445–48, 101 *S.Ct.* 703, 710–12, 66 *L.Ed.*2d 641, 652–54 (1981), before he was transferred. On November 5, 2010, after the hearing, the Pennsylvania court ordered his temporary transfer to New Jersey. Defendant was then sent

to New Jersey under Article IV of the IAD statute, not Article III. The 120 days commenced to run on November 18, 2010, the date of his arrival and ended four months later, at which time successive continuances extended the deadline until August 2011. Since he entered his plea well before the final continuance expired, Article IV was not violated and defendant is not entitled to dismissal under that section of the statute either.

Defendant's claim that he is entitled to jail credit for the time he was serving his sentence on the Pennsylvania charges because he was in New Jersey awaiting disposition on his New Jersey charges also lacks merit. *See State v. Carreker*, 172 *N.J.* 100, 111, 796 *A.*2d 847 (2002); *State v. Hugley*, 198 *N.J.Super.* 152, 161, 486 *A.*2d 900 (App.Div.1985). Defendant is not entitled to New Jersey jail credit for time he was serving on the Pennsylvania parole violation resentence. Immediately upon his completion of that sentence, his New Jersey credit began to accrue. There is simply no basis in law for an award of additional jail time credits.

Lastly, defendant claims that absent a finding as to his ability to pay restitution, the entry of a restitution order was improper. We find this argument to be so lacking in merit in light of defense counsel's statement, and defendant's silence on the point, as to warrant no further discussion in a written opinion. *See R.* 2:11–3(e)(2).

Affirmed.