# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1447-19T1

STATE OF NEW JERSEY,

 Plaintiff-Respondent,

v.

BLAKE G. TANNEN,

 Defendant-Appellant.

_____

Submitted May 28, 2020 – Decided June 29, 2020

Before Judges Koblitz, Whipple and Mawla.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Bergen County, Indictment No. 16-06-0718.

Dario Albert Metz & Eyerman LLC, attorneys for appellant (Shelley D. Albert, on the briefs).

Mark Musella, Bergen County Prosecutor, attorney for respondent (Craig Allen Becker, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

On leave to appeal granted, defendant Blake G. Tannen seeks a reversal of the trial court's November 13, 2019 order denying his motions to vacate his guilty plea and to dismiss the indictment on the grounds that the State failed to accept temporary custody of defendant for sentencing in New Jersey while he was incarcerated in New York, in violation of the Interstate Agreement on Detainers (IAD), N.J.S.A. 2A:159A-1 to -15.  We affirm.

## I. Factual Background.

Defendant was charged in a June 17, 2016 indictment with second-degree sexual assault, N.J.S.A. 2C:14-2(c)(1).  On July 18, 2016, defendant entered a guilty plea to the indictment.  Defense counsel recorded on the guilty plea form that defendant was facing a suspended four-year prison sentence.[1]  His sentence was also conditioned on parole supervision for life, N.J.S.A. 2C:43-6.4; registration under Megan's Law, N.J.S.A. 2C:7-1 to -23; and no contact with the

---

[1] Prior to the allocution, the State told the judge that if defendant was determined to be a repetitive and compulsive sex offender after an evaluation at the Adult Diagnostic and Treatment Center (Avenel), he would have to go to prison.  The judge told defendant he would then have "to spend time at" Avenel.  The judge in his opinion and both the State and defense in their appellate briefs agree that defendant's plea agreement called for a four-year suspended term.  We note that defendants found to be repetitive and compulsive offenders may be sentenced to probation with a condition of out-patient treatment.  N.J.S.A. 2C:47-3(b).

victim under Nicole's Law, N.J.S.A. 2C:44-8. Defendant's sentencing in New Jersey was originally scheduled to take place in October 2016.

Defendant failed to appear for the sex offender evaluation because he was arrested in New York and charged on August 13, 2016 with committing sexual assault crimes in New York. Defendant was convicted after a trial in New York and sentenced on March 9, 2018 to a seven-year prison term and other mandatory penalties. The Bergen County court issued a bench warrant as a detainer.

Defendant initiated a request for transport to the Bergen County jail on June 27, 2018, pursuant to the IAD. The same day, the New York State Department of Corrections and Community Supervision sent a letter to the Bergen County Prosecutor asking the State to accept temporary custody of defendant for final disposition of the New Jersey matter. On July 12, 2018, the Warrants and Extraditions Unit of the Bergen County Sheriff's Office declined to take custody of defendant because defendant had already entered a guilty plea and was pending sentencing.

On June 27, 2019, defendant filed motions to vacate his guilty plea and to dismiss the indictment. The judge denied defendant's motions based on State v. Miller, 277 N.J. Super. 122, 127 (App. Div. 1994), where we determined that

the IAD did not apply to a defendant facing sentencing after the entry of a guilty plea. The court ordered defendant to be returned to Bergen County for sentencing upon completion of his New York term. He has a conditional release date of August 9, 2022.

Defendant presents a single issue on appeal:

> I. THE STATE VIOLATED THE INTERSTATE AGREEMENT ON DETAINERS.

## II. Legal Analysis.

"As a 'congressional sanctioned interstate compact,' the interpretation of the IAD 'presents a question of federal law.'" State v. Pero, 370 N.J. Super. 203, 214 (App. Div. 2004) (quoting Cuyler v. Adams, 449 U.S. 433, 442 (1981)). "Questions related to statutory interpretations are legal ones" and therefore, we review those conclusions de novo. State v. S.B., 230 N.J. 62, 67 (2017).

"The overriding goal of all statutory interpretation 'is to determine as best we can the intent of the Legislature, and to give effect to that intent.'" Ibid. (quoting State v. Robinson, 217 N.J. 594, 604 (2014)). "[T]he best indicator of that intent is the statutory language" to which we give its "ordinary meaning and significance." DiProspero v. Penn, 183 N.J. 477, 492 (2005). "In order to construe the meaning of the Legislature's selected words, we can also draw inferences based on the statute's overall structure and composition." S.B., 230

N.J. at 68. If the intent is clear on its face, "then the 'interpretative process is over.'" Ibid. (quoting State v. Hupka, 203 N.J. 222, 232 (2010)).

"The [IAD] is a compact entered into by [forty-eight] States, the United States, and the District of Columbia to establish procedures for resolution of one State's outstanding charges against a prisoner of another State." New York v. Hill, 528 U.S. 110, 111 (2000); State v. Baker, 198 N.J. 189, 192 n.1 (2009). The IAD "creates uniform procedures for lodging and executing a detainer, i.e., a legal order that requires a State in which an individual is currently imprisoned to hold that individual when he has finished serving his sentence so that he may be tried by a different State for a different crime." Alabama v. Bozeman, 533 U.S. 146, 148 (2001). The IAD "provides for expeditious delivery of the prisoner to the receiving State for trial prior to the termination of his sentence in the sending State." Ibid.

The purpose of the IAD, codified in New Jersey at N.J.S.A. 2A:159A-1 to -15, "is 'to encourage the expeditious and orderly disposition of such [outstanding] charges and determinations of the proper status of any and all detainers based on untried indictments, informations or complaints' and to provide 'cooperative procedures' for making such determinations." State v. Perry, 430 N.J. Super. 419, 424-25 (App. Div. 2013) (alteration in original)

A-1447-19T1

(quoting 18 U.S.C. app. 2, art. I; N.J.S.A. 2A:159A-1). The IAD "shall be liberally construed so as to effectuate its purposes." N.J.S.A. 2A:159A-9.

"Article III of the [IAD] gives a prisoner incarcerated in one State the right to demand the speedy disposition of 'any untried indictment, information or complaint' that is the basis of a detainer lodged against him [or her] by another State." Carchman v. Nash, 473 U.S. 716, 718-19 (1985). Article III(a) provides, in pertinent part:

> Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party State, and whenever during the continuance of the term of imprisonment there is pending in any other party State any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he [or she] shall be brought to trial within 180 days after he [or she] shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his [or her] imprisonment and his [or her] request for a final disposition to be made of the indictment, information or complaint: provided that for good cause shown in open court, the prisoner or his [or her] counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.
>
> [N.J.S.A. 2A:159A-3(a).]

A-1447-19T1

"Failure to abide by the [180-day] time limit set forth in Article III requires dismissal of the indictment as set forth in Article V." Pero, 370 N.J. Super. at 207. Article V(c) states:

> If the appropriate authority shall refuse or fail to accept temporary custody of said person, or in the event that an action on the indictment, information or complaint on the basis of which the detainer has been lodged is not brought to trial within the period provided in Article III or Article IV hereof, the appropriate court of the jurisdiction where the indictment, information or complaint has been pending shall enter an order dismissing the same with prejudice, and any detainer based thereon shall cease to be of any force or effect.
>
> [N.J.S.A. 2A:159A-5(c).]

The 180-day period to bring the prisoner to trial "does not commence until the prisoner's request for final disposition of the charges against him [or her] has actually been delivered to the court and prosecuting officer of the jurisdiction that lodged the detainer." Fex v. Michigan, 507 U.S. 43, 52 (1993); see also Pero, 370 N.J. Super. at 215.

Defendant argues that, while he was incarcerated in New York, the State deprived him of his right under the IAD to be sentenced in New Jersey within 180 days of the prosecutor's receipt of his request. Defendant rejects the trial court's reliance on Miller, arguing that the court overlooked a key fact that the defendant in Miller waived his statutory rights under the IAD. He argues that,

based on the intent and plain language of the statute, the IAD should apply to sentencing.

In Carchman, the Supreme Court of the United States examined the language of Article III of the IAD and determined:

> Article III by its terms applies to detainers based on "any untried indictment, information or complaint." The most natural interpretation of the words "indictment," "information," and "complaint" is that they refer to documents charging an individual with having committed a criminal offense. . . . This interpretation is reinforced by the adjective "untried," which would seem to refer to matters that can be brought to full trial, and by [Article] III's requirement that a prisoner who requests final disposition of the indictment, information, or complaint, "shall be brought to trial within 180 days."
>
> [Carchman, 473 U.S. at 724.]

The Court concluded that the "language of the [IAD] therefore makes clear that the phrase 'untried indictment, information or complaint' in [Article] III refers to criminal charges pending against a prisoner." Id. at 725.

Citing to the Supreme Court's findings in Carchman, in Miller we stated:

> Since Carchman was decided, federal and state courts appear to uniformly conclude that the IAD does not apply to either Article III or Article IV cases following disposition by plea or verdict. See, e.g., United States v. Coffman, 905 F.2d 330, 332 (10th Cir. 1990); United States v. Currier, 836 F.2d 11, 16 (1st Cir. 1987) (Article IV(e) contention rejected because the IAD does

not apply "to those who have been convicted but not yet sentenced"); Moody v. Corsentino, 843 P.2d 1355, 1369 (Colo. 1993) (plurality opinion); State of Minnesota v. Lewis, 422 N.W.2d 768, 771-72 (Minn. Ct. App. 1988) (term "trial" in the IAD does not include sentencing); State of Washington v. Barefield, 756 P.2d 731, 733-34 (Wash. 1988) (the IAD does not apply to sentencing detainers).

[Miller, 277 N.J. Super. at 127.]

The trial court's reliance on Miller is not misplaced. Although Miller involved a defendant who gave up his IAD rights by seeking return to New York before sentencing, we made clear that the primary reason the defendant was not entitled to the safeguards of the IAD was because we agreed with the reasoning of federal and state courts.

Following his guilty plea, defendant voluntarily left New Jersey and committed sexual crimes in New York for which he was arrested, convicted and sentenced. Defendant, who was incarcerated in New York, was awaiting sentencing in New Jersey at the time of his IAD request.

Defendant argues that his constitutional right to a speedy trial has been violated and notes that sentencing is among the stages of a prosecution deemed "critical" for Sixth Amendment purposes. Defendant brings to our attention United States v. Coleman, No. 13-356, 2015 U.S. Dist. LEXIS 151949 (E.D. Pa.

Nov. 5, 2015), a 2015 decision that relies on this speedy trial reasoning.[2]  We are unconvinced by that court's reasoning.  In 2016, the Supreme Court held in Betterman v. Montana that the Sixth Amendment's guarantee to a speedy trial "does not apply once a defendant has been found guilty at trial or has pleaded guilty to criminal charges."  578 U.S. __, 136 S. Ct. 1609, 1612 (2016).  The right "does not extend beyond conviction, which terminates the presumption of innocence."  Id. at 1618.  While the speedy trial right does not apply, the Court stated that "[a]fter conviction, a defendant's due process right to liberty, while diminished, is still present.  He retains an interest in a sentencing proceeding that is fundamentally fair."  Id. at 1617.

Bergen County is geographically close to New York State, where defendant is incarcerated.  Defendant sought to be brought to his New Jersey sentencing.  He may be suffering practical consequences in New York from a New Jersey sentencing detainer lodged against him.  Because defendant has a fundamental fairness right to a timely sentencing, we urge the State to bring him to New Jersey expeditiously.

---

[2]  We do not interpret Rule 1:36-3 as precluding our citation to unpublished opinions of the federal courts.  Daniels v. Hollister Co., 440 N.J. Super. 359, 367 n.7 (App. Div. 2015).

A-1447-19T1

As the trial court properly found, the right to final disposition within 180 days under the IAD does not apply to defendant's post-plea sentencing, and thus, the State did not violate defendant's statutory rights by not accepting temporary custody while he was incarcerated in New York.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1447-19T1